COMMONWEALTH of Kentucky, De-
partment of Corrections, and Western
Kentucky Correctional Complex, Ap-
pellants,

v.

Bobby CHESTNUT, Appellee.

No. 2006–SC–000086–DG.

Supreme Court of Kentucky.

April 24, 2008.

Emily Dennis, Justice and Public Safety Cabinet, Office of Legal Services, Frankfort, KY, Counsel for Appellants.

Allison I. Connelly, Associate Professor of Law, University of Kentucky College of Law, Legal Clinic, Lexington, KY, Counsel for Appellee.

Opinion of the Court by Justice MINTON.

Bobby Chestnut, a prisoner confined at the Western Kentucky Correctional Complex (WKCC), submitted an open records request to the WKCC asking to see his entire inmate file, excluding any confiden-tial items. The WKCC records custodian denied Chestnut's request because it was too broad and overly vague. Chestnut then sought the Kentucky Attorney General's review of the WKCC denial. And the Attorney General agreed with Chestnut. Next, the WKCC, acting through the Department of Corrections (DOC), appealed the Attorney General's decision; but the Franklin Circuit Court also ruled in Chestnut's favor. After the Court of Appeals also ruled in Chestnut's favor, the DOC sought discretionary review in this Court, which we granted. After examining the relevant statutes and law, we also reject the DOC's contention that inmates like Chestnut must submit particularized open records requests in order to see their own inmate files.

## I. *FACTS AND PROCEDURAL HISTORY.*

Probably hoping to improve his parole chances, Chestnut submitted an open records request for "[a]n entire copy of my inmate file excluding any documents that would be considered cofidential [sic]." The WKCC records custodian denied Chestnut's request as being "too broad and overly vague" and stated that Chestnut "must describe the record (forms) with reasonable particularity, so that the records can be identified." Chestnut appealed the WKCC's decision to the Attorney General of Kentucky and, at the same time, amended his open records request to the WKCC. Chestnut's amended request contained a list of several types of documents he wanted to see, but the amended request also included a demand for "any and every document contained within my file from the front cover to the back." Meanwhile, Chestnut's appeal to the Attorney General stated that he believed his initial description "was clear enough for a laymen [sic] to have understood."

Several days later, the WKCC's records custodian responded to Chestnut's amended request by producing 138 pages of documents. But the WKCC refused to comply with Chestnut's blanket request for all other nonconfidential documents in his file because the WKCC continued to insist that the request was still "vague" and "overly broad...."

On appeal, the Attorney General agreed with Chestnut. In his opinion, the Attorney General acknowledged that his former opinions provided a good faith basis for the WKCC to deny nonspecific open records requests. But the Attorney General noted that he had recently reversed that line of decisions in a case involving a request for the complete personnel records of two school district employees. The Attorney General extended the school district holding to inmate open records requests such as Chestnut's. So the Attorney General opined that "Mr. Chestnut's requests were sufficiently specific to require the WKCC to respond to his requests[,]" meaning, "the responses of WKCC to Mr. Chestnut's requests were inconsistent with the Open Records Act."

Dissatisfied with the Attorney General's opinion, the DOC appealed to the Franklin Circuit Court. After some months passed without Chestnut having filed a response, the DOC moved to submit the appeal for a final decision. The circuit court rejected the DOC's arguments, however, and held that "[t]he purpose and the plain language of the Open Records Act supports the AG's new interpretation...."

The DOC then appealed the circuit court's decision to the Court of Appeals. And the Court of Appeals affirmed the circuit court's decision, holding that "[n]othing ... authorizes the DOC to require an inmate to offer a more detailed description of the records he or she wishes to see." We granted the DOC's motion for discretionary review of the Court of Appeals decision. After careful analysis, we affirm the Court of Appeals.

## II. *ANALYSIS.*

The DOC argues that the Court of Appeals erred by (1) affirming the circuit court's refusal to disturb the Attorney General's decision, which seemingly abolished the specificity requirement for inmate open records requests, and (2) affirming the circuit court's conclusion that the DOC had failed to demonstrate adequately that providing state inmates complete copies of their own files is an unreasonable burden.

 We examine each issue separately using a different standard of review for each. Since the circuit court's review of the Attorney General's decision that the statutes in question do not contain a specificity requirement was de novo, our review on that statutory construction issue is de novo.[1] A different standard of review applies, however, to the DOC's claim that complying with Chestnut's request constitutes an unreasonable burden. In the circuit court action, the DOC, as the party asserting that certain records were exempt from disclosure under the open records laws, bore the burden of proof.[2] And

---

1. *See, e.g., Medley v. Board of Education of Shelby County,* 168 S.W.3d 398, 402 (Ky.App. 2004) ("We note at the outset that the circuit court's review of an Attorney General's opinion is [de novo]. As such, we review the circuit court's opinion as we would the decision of a trial court. Questions of law are reviewed anew by this Court.") (footnote omitted); KRS 61.882(3) (providing that a circuit court shall determine de novo an appeal of an Attorney General's open records decision).

2. *University of Kentucky v. Courier–Journal & Louisville Times Co.,* 830 S.W.2d 373, 377

Chestnut presented no evidence in the proceeding before the circuit court. Under these peculiar circumstances, our settled jurisprudence is as follows:

> When the trial court makes a finding of fact adverse to the party having the burden of proof and his is the only evidence presented, the test of whether its finding is clearly erroneous is not one of support by "substantial evidence["] but[,] rather, one of whether the evidence adduced is so conclusive as to compel a finding in his favor as a matter of law.[3]

Our task on appeal, then, is to see if the evidence presented by the DOC to the circuit court was so conclusive as to compel a finding in its favor.[4]

A. *No Specificity Requirement in Open Records Act.*

The General Assembly enacted the Kentucky Open Records Act, KRS 61.870, *et seq.*, because it determined that "free and open examination of public records is in the public interest[,]" even if "such examination may cause inconvenience or embarrassment to public officials or others."[5] And so the General Assembly decreed that with few limited exceptions, "[a]ll public records shall be open for inspection by any person...."[6]

■ The General Assembly's use of the broadly inclusive "any person" demonstrates its intention not to limit the class or type of persons entitled to inspect public records. In fact, the General Assembly used "any person" again in KRS 61.872(2), which provides that "[a]ny person shall have the right to inspect public records." So, other than the exception found at KRS 197.025, which we will discuss more fully later in this opinion, the open records laws identify no class or type of persons, even prisoners, who are held to a more stringent standard when submitting open records requests. And this presumption in favor of broad availability of public records is even stronger when a person, like Chestnut, seeks access to public records pertaining to himself.[7] So the DOC bears the burden to rebut the strong presumption in favor of disclosure.[8]

The DOC argues first that the Attorney General's opinion in Chestnut's favor was simply wrong. This is, in essence, a contention that the Attorney General's decision was arbitrary because judicial review of the decision of an administrative agency must focus on whether the agency's decision was arbitrary.[9] To that end, the DOC

(Ky.1992). *See also* Kentucky Revised Statutes (KRS) 61.882(3).

3. *Morrison v. Trailmobile Trailers, Inc.*, 526 S.W.2d 822, 824 (Ky.1975).

4. Such a clearly erroneous standard of review is similar to KRS 61.872(6), which requires that a public agency's refusal to disclose public records because of an allegedly unreasonable burden must be supported "by clear and convincing evidence." So even if we used the clearly erroneous standard of review in lieu of the heightened standard of review contained in *Morrison, supra,* the DOC's arguments would fail nevertheless.

5. KRS 61.871.

6. KRS 61.872(1).

7. *See* KRS 61.884 ("Any person shall have access to any public record relating to him or in which he is mentioned by name, upon presentation of appropriate identification, subject to the provisions of KRS 61.878.").

8. *See, e.g., Hardin County Schools v. Foster,* 40 S.W.3d 865, 868 (Ky.2001).

9. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission,* 379 S.W.2d 450, 456 (Ky.1964) ("Basically, judicial review of administrative action is concerned with the question of *arbitrariness.*").

argues that the Attorney General erred when it changed his position and decided that inmates were not required to submit their open records requests with particularity. We reject DOC's argument on this point.

First, nothing in KRS 61.872(2) contains any sort of particularity requirement. Rather, KRS 61.872(2) only requires that one seeking to inspect public records may be required to submit a written application "describing the records to be inspected." We must interpret statutes as written, without adding any language to the statute,[10] even in open records cases.[11] And it is obvious that the General Assembly chose only to require the record to be described. It did not add any modifiers like *particularly described.*

The absence of a particularity requirement under KRS 61.872(2) is contrasted with the fact that the General Assembly inserted a particularity requirement in KRS 61.872(3), which applies when a person seeks to receive copies of public records by mail.[12] The DOC relies upon KRS 61.872(3)'s particularity requirement in its brief. But the applicability of KRS 61.872(3), if any, is not properly before us because the DOC admits that it did not raise that subsection's applicability when it presented its

case to the circuit court. So we express no opinion as to what effect, if any, KRS 61.872(3) may have on this case. But we do observe in passing that KRS 61.872(3)(b) seemingly applies when someone residing outside the county in which the public records are located desires to receive copies of the public records through the mail. Obviously, Chestnut resided in the same county as the records kept by the custodian of the WKCC. We similarly decline to address the DOC's other unpreserved arguments, such as its contention regarding the constitutionality of the Attorney General's decisions having the force of law, absent an appeal.

Because we lack the power to rewrite the open records act, we cannot add a particularity requirement where none exists. Chestnut described the records he wanted to see—the content of his own inmate file. It appears obvious to us that Chestnut's request was adequate for a reasonable person to ascertain the nature and scope of Chestnut's open records request.[13] He was required to do nothing more and, indeed, likely could not have done anything more because he could not reasonably be expected to request blindly, yet with particularity, documents from a file that he had never seen.[14]

**10.** *See, e.g., Commonwealth v. Harrelson,* 14 S.W.3d 541, 546 (Ky.2000).

**11.** *Hoy v. Kentucky Industrial Revitalization Authority,* 907 S.W.2d 766, 768 (Ky.1995).

**12.** KRS 61.872(3)(b) provides, in relevant part, that "[t]he public agency shall mail copies of the public records to a person whose residence or principal place of business is outside the county in which the public records are located after he precisely describes the public records which are readily available within the public agency."

**13.** *See, e.g.,* 37A Am.Jur.2d Freedom of Information Acts § 412 (2008) (stating that the

"test" under various freedom of information/open records acts "is whether the records can be located with reasonable effort. . . .").

**14.** *See, e.g., State Board of Equalization v. Superior Court,* 10 Cal.App.4th 1177, 13 Cal. Rptr.2d 342, 347 n. 9 (1992) ("It would be impossible for Associated to be so specific unless it possessed a document index, which the Board refuses to provide. By this ploy, the Board would place Associated into a classic 'Catch–22' situation."). The DOC admits in its brief that inmates at the WKCC are prohibited from entering the offender records office to physically inspect their institutional inmate file.

Despite the absence of a specificity requirement in KRS 61.872(2), the DOC's Kentucky Corrections Policies and Procedures (CPP), policy number 6.1,[15] relied upon by the DOC, does contain a specificity requirement. Section VI(B)(1)(c) of policy number 6.1 requires an inmate to provide a "reasonably particular description of the record being requested." This administrative regulation, however, provides no relief to the DOC in this case because it purports to add a requirement not found in the statutes. And an administrative agency "cannot by its rules and regulations, amend, alter, enlarge or limit the terms of legislative enactment."[16]

Finally, we are aware that an inmate's open records request is subject to the limitations contained in KRS 197.025. That statute governs access to inmate and facility records. Nothing in that statute, however, contains any inmate-specific particularization requirement. Rather, KRS 197.025(2) only mandates that the DOC comply with an inmate's records request if "the request is for a record which contains a specific reference to that individual." Chestnut complied with that requirement because he only requested nonconfidential matters contained in his own WKCC file. In short, as the Court of Appeals correctly held, "[n]othing in KRS 197.025 ... authorizes the DOC to require an inmate to offer a more detailed description of the records he or she wishes to see."

Since the General Assembly has not created a particularity requirement for inmate open records requests but only provided for compliance where the inmate is seeking items in his or her own file, we reject the DOC's contention that the Attorney General acted arbitrarily when he opined that Chestnut did not have to submit a particularized request.[17] In so doing, we express our agreement with the District Court of Rhode Island's astute holding that an open records request

> should not require the specificity and cunning of a carefully drawn set of discovery requests, so as to outwit narrowing legalistic interpretations by the government. A citizen should be able to submit a brief and simple request for the government to make full disclosure or openly assert its reasons for non-disclosure.[18]

We recognize that the Attorney General's opinion in Chestnut's case is a departure from his former position on this point and that his departure was based upon an extension of his recent decision in an open records request for school district employees' personnel files. We would not quibble with the DOC that there is a considerable difference between an inmate's correctional file and a school employee's personnel file. And some might reasonably insist that prisoners should be allowed less access to public records than members of the general public, such as school employees. But our role here is simply to construe the open record laws

---

15. *Incorporated by reference at* 501 KAR 6:020.

16. *Camera Center, Inc. v. Revenue Cabinet,* 34 S.W.3d 39, 41 (Ky.2000), *citing Brown v. Jefferson County Police Merit Board,* 751 S.W.2d 23 (Ky.1988).

17. Obviously, the Attorney General's opinion in this case has been superseded by the opinions of the circuit court and the Court of

Appeals. However, we shall address the DOC's arguments regarding the Attorney General's role in this proceeding in an effort to provide guidance for future litigants.

18. *Providence Journal Co. v. Federal Bureau of Investigation,* 460 F.Supp. 778, 792 (D.R.I. 1978), *reversed on other grounds on appeal,* 602 F.2d 1010 (1st Cir.1979).

as the General Assembly has enacted them. In this case, the General Assembly has not seen fit to limit inmates' access to public records, other than the limitations contained in KRS 197.025. So the Attorney General's decision to extend its treatment of school employees' personnel files to an inmate's request to see his own inmate file was logical, and it was not arbitrary.[19]

■ We also reject the DOC's procedural argument that the Attorney General did not adequately explain his departure from his earlier opinions. We agree with the DOC that the Attorney General had an obligation to explain why his decision in Chestnut's case was at variance with his prior opinions.[20] But the Attorney General's opinion contains an analysis, centering upon his decision in the case involving school employees' personnel files, of why he chose to depart from his earlier precedent regarding the specificity requirement for inmate open records requests. So we conclude that the Attorney General complied with his duty to explain the rationale for his decision.

■ Likewise, we reject the DOC's contention that it did not have an adequate opportunity to explain its position regarding Chestnut's appeal before the issuance of the Attorney General's opinion. We agree with the DOC that it had a right to submit a brief or other document in support of its position before the Attorney General's resolution of that appeal.[21] But the record reflects that the DOC did submit a three-page letter to the Attorney General approximately three weeks before the Attorney General issued his opinion. And the Attorney General's opinion quotes at length from the DOC's letter. So the DOC availed itself of the opportunity to present to the Attorney General whatever arguments it deemed appropriate well before the issuance of the Attorney General's opinion. Furthermore, any shock the DOC allegedly suffered when the Attorney General changed course certainly caused the DOC to suffer no lasting prejudice, even though the DOC was barred from seeking the Attorney General to reconsider his opinion,[22] because the DOC had the right, which it obviously exercised, to appeal the Attorney General's opinion to the Franklin Circuit Court.[23]

■ In light of our earlier holding that the relevant statutes do not contain a specificity requirement, the DOC urges us to require the Attorney General to perpetuate what we find to have been an erroneous interpretation of the law. We decline to do this.[24] The Attorney General was permitted to reexamine—and even reject—its former interpretation of the law.[25]

---

19. *See American Beauty Homes Corp.*, 379 S.W.2d at 456 (discussing how courts review administrative agency actions for arbitrariness).

20. *In re Hughes and Coleman*, 60 S.W.3d 540, 544 (Ky.2001) (holding that an administrative agency departing from its precedent "must explicitly and rationally justify such a change of position.").

21. *See* 40 KAR 1:030(2).

22. 40 KAR 1:030(4) provides that "[t]he Attorney General shall not reconsider a decision rendered under the Open Records Law or the Open Meetings Law. Parties dissatisfied with a decision may appeal the decision to circuit court as provided in KRS 61.880(5) and 61.848."

23. *See* KRS 61.880(5)(a).

24. *See, e.g., Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet*, 689 S.W.2d 14, 20 (Ky.1985).

25. *See, e.g., In re Hughes & Coleman*, 60 S.W.3d at 544 (holding that an administrative agency "may reexamine its prior decisions and depart from its precedents. . . .").

■ To summarize, we affirm the Court of Appeals' ultimate holding that there is no statutory particularization requirement in KRS 61.872(2) when inmates file an open records request for their own files. Having done so, we must now address the DOC's argument that complying with Chestnut's request, which implicates the future requests of similarly situated inmates, constitutes an unreasonable burden under KRS 61.872(6), as well as the DOC's contention that complying with Chestnut's request would compromise institutional security under KRS 197.025.

**B.** *The DOC Has Not Shown the Existence of an Unreasonable Burden, nor Has It Demonstrated That Complying with Chestnut's Request Compromises Institutional Security.*

■ Although the general policy favors broad availability of public records, that availability is not unlimited. Perhaps the main exception to the general presumption that public records are subject to public inspection is contained in KRS 61.872(6), which provides that an otherwise valid open records request may be denied if complying with it would cause "an unreasonable burden. . . ." But a public agency refusing to comply with an open records request on this unreasonable-burden basis faces a high proof threshold since the agency must show the existence of the unreasonable burden "by clear and convincing evidence."[26]

■ The DOC has submitted affidavits purporting to show how burdensome and time consuming it would be for it to sift through the voluminous inmate records to determine what material an inmate making

an open records request is entitled to receive and what information ought properly to be withheld for institutional safety or privacy concerns. Although these affidavits are not particularly convincing because they are vague on the subject of how much time it takes to comply with inmate open records requests and how much extra time it would take to comply with inmate requests if we rule in favor of Chestnut, we are satisfied that the task of determining what materials are properly subject to an inmate's open records request is tedious and time-consuming work.

However, that does not mean that complying with Chestnut's open records request automatically constitutes an unreasonable burden. Regardless of the specificity of the open records request, the DOC personnel are still obligated to sift through any requested materials in order to determine which documents (or portions of a document) must be redacted or excised by reasons of privacy or for institutional safety under KRS 197.025. In other words, it appears that the DOC's position is that its obligations under the open records system, even before Chestnut's case was filed, were unduly burdensome. Any relief here must come from the General Assembly in the form of restricting access to public records, extending the time period for state agencies to respond to open records requests,[27] or providing necessary additional funds to allow state agencies to comply timely and fully with open records requests.

■ The winnowing process required of the DOC by the General Assembly un-

---

**26.** KRS 61.872(6).

**27.** KRS 61.880(1) gives public agencies a mere three days, excluding weekends and le-

gal holidays, to respond to open records requests.

der KRS 197.025 does not rise to the level of an unreasonable burden under KRS 61.872(6),[28] especially in light of the fact that the General Assembly has already mandated that all public agencies, such as the DOC, must separate materials exempted from disclosure in a document from materials that are subject to disclosure.[29] Thus, the obvious fact that complying with an open records request will consume both time and manpower is, standing alone, not sufficiently clear and convincing evidence of an unreasonable burden. Moreover, the DOC's argument regarding the unreasonable burden of complying with open records requests of inmates as a whole class of people misses the mark because the unreasonable burden language in KRS 61.878(6) focuses on a singular "application," not a group of applications from an entire class of applicants.[30]

Also, we reject the DOC's seeming contention that it is an undue hardship to comply with inmate requests such as Chestnut's because each inmate has numerous "files," which may be physically located at more than one spot across the Commonwealth. For example, it appears that DOC had a file for Chestnut at both WKCC and at least one other location. First, as we construe it, Chestnut's request only encompassed materials contained in his WKCC institutional file. Second, although the DOC's method of organizing its files is clearly beyond our purview, the DOC could, as recognized at oral argument, reorganize its materials in such a manner as to more easily facilitate open records review by inmates, the general public, and DOC personnel.[31] Third, the DOC did not raise this argument in its response to Chestnut's original or amend-

---

**28.** Though we apparently have not yet had occasion to rule on this issue, the Attorney General has. *See, e.g.,* Ky. Op. Atty. Gen. 2007–ORD–205, 2007 WL 2849566 *1, *6 ("Some of the records at issue may be privileged or contain exempt information, but the fact that the Commission will have to separate confidential documents from nonconfidential documents [cannot] serve as a basis for denying a request under KRS 61.872(6). To the contrary, the presence of some exempt information in the ... [files] does not relieve the [Commission] of its obligation to provide all nonexempt information. If any public record contains material which is not excepted under KRS 61.878, the public agency shall separate the excepted and make the nonexcepted material available for examination. KRS 61.878(4). In sum, the alleged necessity of separating exempt and nonexempt material is not a sufficient reason for denying access to records.") (citations and quotation marks omitted).

**29.** *See* KRS 61.878(4) ("If any public record contains material which is not excepted under this section, the public agency shall separate the excepted and make the nonexcepted material available for examination.").

**30.** KRS 61.872(6) provides that "[i]f the application places an unreasonable burden in

producing public records ... the official custodian may refuse to permit inspection of the public records or mail copies thereof."

**31.** *See, e.g.,* KRS 61.8715 ("The General Assembly finds an essential relationship between the intent of this chapter and that of KRS 171.410 to 171.740, dealing with the management of public records, and of KRS 11.501 to 11.517, 45.253, 171.420, 186A.040, 186A.285, and KRS 194A.146, *dealing with the coordination of strategic planning for computerized information systems in state government;* and that to ensure the efficient administration of government and to provide accountability of government activities, public agencies are required to manage and maintain their records according to the requirements of these statutes."); 37A Am.Jur.2d *Freedom of Information Acts* § 412 (2008) ("Thus, where the requester sought a list of names and addresses of certain persons, the agency's assertion at trial that the request was not appropriate because the agency did not maintain a single list of all such names and addresses was rejected because the agency did in fact maintain records containing the names and addresses sought, though they had never previously been compiled into a single document.").

ed open records request.[32] In other words, the DOC should not be able to rely on any inefficiency in its own internal record keeping system to thwart an otherwise proper open records request.

Moreover, the fact that many inmates' files, such as Chestnut's, are voluminous does not mean that it would necessarily be an unreasonable burden for a state agency such as the DOC to comply with an otherwise valid open records request. A record's length, standing alone, is an insufficient reason to exempt it from open records disclosure.[33] Moreover, the DOC did not raise this issue in its initial denial of Chestnut's open records request, nor did it raise it in response to Chestnut's amended open records request.[34]

Finally, we reject the DOC's assertion that it was permitted to deny Chestnut's open records request under the inmate-specific open records exception set forth in KRS 197.025. KRS 197.025(1) provides that "KRS 61.870 to 61.884 to the contrary notwithstanding, no person shall have access to any records if the disclosure is deemed by the commissioner of the department or his designee to constitute a threat to the security of the inmate, any other inmate, correctional staff, the institution, or any other person." It is important again to note that the DOC did not cite KRS 197.025 to Chestnut when it denied his original and amended open records requests.[35]

We agree with the DOC that certain items in an inmate's institutional record, such as inmate conflict notification forms, may be exempt from public disclosure under KRS 197.025.[36] But we reject the DOC's argument that a possible inadvertent disclosure of any such protected matter is a reason to deny open records requests such as Chestnut's. We trust that the DOC will scrupulously perform its duty to ensure that any privileged materials are not provided to inmates, or to anyone else, under an open records request. But it is clear to us that the prospect of a public agency's potentially negligent disclosure of protected items is simply an insufficient reason to thwart the openness the General Assembly sought to achieve when it enacted the Open Records Act.[37]

---

**32.** *See* KRS 61.880(1) (requiring public agency denying an open records request to "include a statement of the specific exception authorizing the withholding of the record and a brief explanation of how the exception applies to the record withheld.").

**33.** *See, e.g.,* Ky. Op. Atty. Gen. 07–ORD–205, 2007 WL 2849566 at *6 ("Although Mr. Crittenden's request may implicate numerous records, such a voluminous request is not necessarily unreasonably burdensome. To hold otherwise would contravene the express mandate of KRS 61.8715, requiring public agencies to maintain records in such a way as to facilitate access.") (quotation marks omitted); *State Board of Equalization,* 13 Cal.Rptr.2d at 347 n. 9; 37A Am.Jur.2d Freedom of Information Acts § 412 (2008) ("Since the test is whether the records can be located with reasonable effort, the size of a request is not the measure of whether a request reasonably describes an identifiable record, and an agency cannot evade a request by merely claiming that the request will require the review of thousands of records.") (footnote omitted).

**34.** *See* KRS 61.880(1) (requiring agency to briefly state why record being withheld).

**35.** *Id.*

**36.** Likewise, we agree with the DOC that certain portions of an inmate's file may be exempted from disclosure under the exemptions contained in KRS 61.878. For example, any preliminary memoranda in which opinions are expressed, such as a pre-parole progress report, may be exempted from disclosure under KRS 61.878(1)(j).

**37.** *See, e.g., Electronic Privacy Information Center v. Department of Justice,* 416 F.Supp.2d 30, 42 (D.D.C.2006) ("To be sure, the court

## III. CONCLUSION.

Over seventy years ago, Justice Louis Brandeis opined that "[s]unlight is said to be the best of disinfectants[.]" [38] The General Assembly fully embraced Justice Brandeis's observation when it expressed a clear desire for public availability of public agency documents through the Kentucky Open Records Act,[39] and the General Assembly did not enact an express requirement for inmates asking to see their own records to be treated differently. Thus, we affirm the Court of Appeals. Because we are affirming the Court of Appeals, it is ORDERED that Appellee's motion to strike portions of Appellant's reply brief is denied as moot. We caution counsel, however, to refrain from attempting to raise new arguments or to refer to matters outside the record in a reply brief.

All sitting, except CUNNINGHAM, J. All concur.

does not wish for DOJ to inadvertently release exempted materials.... [However, v]ague suggestions that inadvertent release of exempted documents *might* occur are insufficient to outweigh the very tangible benefits that FOIA [Freedom of Information Act] seeks to further-government openness and accountability.").

**38.** L. BRANDEIS, OTHER PEOPLE'S MONEY 62 (National Home Library Foundation ed.1933) (*as quoted in Buckley v. Valeo,* 424 U.S. 1, 67, 96 S.Ct. 612, 658, 46 L.Ed.2d 659, 715 n. 80 (1976)).

**39.** KRS 61.871 ("The General Assembly finds and declares that the basic policy of KRS 61.870 to 61.884 is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others.").