RENDERED:  AUGUST 28, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000700-MR

PRISMA CAPITAL PARTNERS, LP; PACIFIC
ALTERNATIVE ASSET MANAGEMENT
COMPANY, LLC; AND GRAHMN N. MORGAN        APPELLANTS


|  | APPEAL FROM FRANKLIN CIRCUIT COURT |
|---|---|
| v. | HONORABLE THOMAS D. WINGATE, JUDGE |
|  | ACTION NO. 18-CI-01243 |


KENTUCKY RETIREMENT SYSTEMS        APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, JONES, AND TAYLOR, JUDGES.

JONES, JUDGE:  Appellants Prisma Capital Partners, LP ("Prisma"), Pacific

Alternative Asset Management Company, LLC ("PAAMCO"), and Grahmn N.

Morgan (collectively with Prisma and PAAMCO, "Appellants") submitted three

requests to Appellee Kentucky Retirement Systems ("KRS") pursuant to

Kentucky's Open Records Act, KRS[1] 61.870, *et seq.* (the "Open Records Act"). The requests sought access to records related to KRS's decision to endorse litigation claims advanced in *Mayberry*, *et al. v. KKR & Co., L.P.*, *et al.*, Franklin Circuit Court Case No. 17-CI-01348. KRS refused to disclose certain documents created by the *Mayberry* Plaintiffs' attorneys, asserting that they were exempt from disclosure under KRS 61.878(1)(i) and (j) as "preliminary documents" and were additionally protected by the work product doctrine, among other civil litigation limitations. At the time the documents were produced, KRS and the *Mayberry* Plaintiffs were adversarial parties and KRS's Joint Notice had not yet been proffered.

The Office of the Attorney General ("OAG") initially ruled that the documents were not exempted from disclosure as preliminary, concluding that the withheld documents had forfeited their preliminary status upon being incorporated into KRS's Public Notice endorsing the *Mayberry* Plaintiffs' claims. However, on appeal, the Franklin Circuit Court held that the documents were protected from disclosure under the work product doctrine. The circuit court found that the documents had been created at the direction of KRS. Having reviewed the record in conjunction with all applicable legal authority, we cannot agree that the work product doctrine applies. The attorneys who created the documents worked for the

---
[1] Kentucky Revised Statutes.

*Mayberry* Plaintiffs, not KRS; likewise, there was no agreement in place between KRS and the *Mayberry* Plaintiffs' counsel at the time the documents were created or shared that would make the documents KRS's work product. Any privilege was waived when the *Mayberry* Plaintiffs' counsel voluntarily shared the documents with KRS. Accordingly, having reviewed the record in conjunction with all applicable legal authority, we REVERSE and REMAND the Franklin Circuit Court's order for reasons more fully explained below.

## I. BACKGROUND

This appeal arises from a series of requests made by the Appellants to Appellee KRS under Kentucky's Open Records Act, KRS 61.870, *et seq*. In response to the requests, KRS withheld two sets of records as attorney work product, which are ultimately at issue in this appeal: (1) a nine-page string of emails dated from March 20-26, 2018, between KRS, a state agency, and the *Mayberry* Plaintiffs' private counsel; and (2) a 110-page document entitled "Overview of Pending Litigation" prepared by the *Mayberry* Plaintiffs' attorneys and shared with KRS on March 27, 2018. Division I of the Franklin Circuit Court conducted an *in camera* review of the subject documents, at which time it concluded that the records constituted KRS attorney work product. In doing so, the circuit court remarked that the withheld records were "something else" and "I don't know if they're work product, I don't know if they're common interest, but I

-3-

can understand why perhaps they [KRS] don't want you to see them." V.R.[2] 4/10/19; 10:31:17.

Underlying this appeal is *Mayberry, et al. v. KKR & Co. L.P., et al.*, Civil Action No. 17-CI-01348 ("*Mayberry*"), a "derivative" lawsuit in which eight individual members of KRS-administered retirement plans represented by contingency-fee counsel purported to advance their claim "on behalf of" KRS. The *Mayberry* Plaintiffs originally sued current and former trustees and officers of KRS, as well as certain outside advisors and investment managers, including Appellants PAAMCO and Prisma, for leading KRS to enter into three "fund-of funds" hedge-fund investments. The Plaintiffs alleged that these investments were unsuitable, underperformed relative to the stock market, and increased KRS's unfunded pension liabilities. The Plaintiffs did not provide KRS with advance notice that they were filing suit, nor did they obtain legal authorization to bring claims on behalf of KRS. Rather, they opted to sue KRS as a nominal defendant, contending that KRS's Board of Trustees was conflicted and incapable of evaluating whether KRS should assert the claim independently.

The *Mayberry* Defendants, Prisma and PAAMCO among them, sought dismissal of the case on February 23, 2018, claiming that the *Mayberry* Plaintiffs, having not been denied any benefits under their respective plans, lacked

---

[2] Video record.

standing to bring their claim. With the motions to dismiss pending, the circuit court asked KRS what its stance was relative to the lawsuit. This prompted a series of emailed interactions between KRS and the *Mayberry* Plaintiffs' counsel spanning March 20-26, 2018. At the time of these emails, KRS was not represented by the *Mayberry* Plaintiffs' counsel.

Records available to this Court show that the *Mayberry* Plaintiffs' counsel and consultants then met with KRS's legal counsel at KRS's offices on March 27, 2018. At the time, there was no joint agreement between KRS and the *Mayberry* Plaintiffs, and the parties were still adversarial. While the substance of that meeting has not been disclosed, KRS admitted before the Attorney General that "[the *Mayberry*] Plaintiffs' counsel presented the [Overview of Pending Litigation] in confidence to KRS's counsel and special litigation committee" during that meeting. R.[3] at 619, 622.

The Appellants subsequently sent an Open Records Act request to KRS on April 2, 2018, seeking "any and all documents or correspondence" from the *Mayberry* Plaintiffs or their counsel to KRS "consisting of, or relating to, demands, requests and/or authorizations to pursue any or all of the claims that are asserted or could be asserted in the Action." R. at 71-72. On April 17, 2018, KRS

---

[3] Record.

responded to the request and asserted simply that the documents being sought were "preliminary documents" exempt from inspection under KRS 61.878(1)(i) and (j).

Two days after KRS's refusal, the *Mayberry* Plaintiffs and "Nominal Defendant" KRS filed a Joint Notice with the circuit court indicating that KRS had created a special litigation committee of its board to investigate and consider the claims asserted in the *Mayberry* action. According to the Joint Notice, KRS "will not pursue the claims asserted by [the *Mayberry*] Plaintiffs" but the claims "appear to have merit," and KRS "believes that it is in the best interests of KRS for [the *Mayberry*] Plaintiffs to continue their pursuit of these claims on a derivative basis on KRS's behalf." R. at 340-45. The Joint Notice did not disclose any basis for KRS's decision.

As a result of this Joint Notice, the Appellants resubmitted their first request to KRS on April 30, 2018. On the same day, they sent a second request to KRS for the production of documents and communications related to the Joint Notice, including communications with the *Mayberry* Plaintiffs and their counsel and any information that KRS and its special litigation committee relied upon in reaching its decision to endorse the *Mayberry* Plaintiffs' claims on behalf of KRS.

KRS responded to both requests on May 31, 2018, producing some of the documents requested[4] and providing three reasons for withholding the remainder. First, KRS asserted that the communications between KRS, KRS's attorneys, the *Mayberry* Plaintiffs, and the *Mayberry* Plaintiffs' attorneys were protected by the common interest privilege of KRE[5] 503(b)(3). Second, it stated that any communications related to settlement were exempt from disclosure under KRE 408. KRS's third and final proffered reason was that the requested documents were outside the scope of discovery under CR[6] 26.02.

On October 1, 2018, the Appellants sought review of the denial of their request by the OAG, to which KRS responded on October 9, 2018. The OAG requested that KRS submit copies of the withheld records for an *in camera* review of the documents on October 10, 2018, and provide a detailed statement describing the withheld documents and the specific applicable exemptions for each. KRS refused to comply with the OAG's request for unredacted copies of the documents but did identify the two sets of documents it was withholding: (1) the March email

---

[4] It was at this time that KRS produced the attendance list for the March 27, 2018, meeting at KRS's offices between the *Mayberry* Plaintiffs' counsel and consultants and KRS's counsel and representatives.

[5] Kentucky Rules of Evidence.

[6] Kentucky Rules of Civil Procedure.

correspondence between KRS and the *Mayberry* Plaintiffs' private counsel; and (2) the Overview of Pending Litigation packet.

On December 14, 2018, the OAG ruled in favor of the Appellants, finding that "KRS violated the Open Records Act in failing to satisfy its burden of proof concerning responsive records withheld by refusing to provide copies of the disputed records to the Attorney General for *in camera* review per KRS 61.880(2)(c)." R. at 326-28. The OAG further provided that KRS could not withhold the documents as preliminary as that preliminary status had been forfeited upon being adopted by KRS as a basis for a final action. The OAG deemed the Joint Notice to be a final action and stated that "the withheld records were the basis for KRS delegating its KRS 61.645(2)(a) authority to 'sue or be sued' to the Plaintiffs." 18-ORD-231.

KRS then appealed the OAG's opinion to the Franklin Circuit Court, where both KRS and the Appellants filed motions for summary judgment. *See* KRS 61.880(5). In its motion, KRS asked the circuit court to determine whether the Open Records Act requires an agency to release what it considers to be confidential, privileged, and preliminary communications regarding ongoing litigation. Per agreement between the parties, KRS tendered the documents in question to the circuit court for an *in camera* review. On April 10, 2019, the court conducted the review and found the documents to be protected by the attorney

work product doctrine found in CR 26.02(3)(a), allowing KRS to withhold the documents in question.

Five days later, the circuit court reversed the Attorney General and granted KRS summary judgment in an April 15, 2019, opinion and order. The circuit court premised its judgment upon the attorney work product privilege provided in CR 26.02(3)(a) and incorporated into the Open Records Act through KRS 61.878(1), which states in part, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." CR 26.02(3)(a). The circuit court stated that it must "protect KRS's interest in allowing the agency the full ability for its attorneys to work on its behalf without being compelled to consistently disclose what would otherwise be plainly protected by the attorney work product doctrine if a state agency was not the party that the opposition was seeking disclosure from." R. at 1157. The circuit court further provided:

> [T]he Court agrees with previous holdings of the OAG that the attorney work product privilege applies to the exceptions to the Open Records Act. . . .
>
> To properly determine if the documents are attorney work product, the Court must ascertain whether the documents were "prepared in anticipation of litigation or for trial by or for another party. *Duffy v. Wilson*, 289 S.W.3d 555, 559 (Ky. 2009) (quoting CR 26.02(3)(a)). In *Duffy*, the Kentucky Supreme Court held that "[a] document need not be created by a party's attorney to be work product[,]" and "[t]he policy of protecting

-9-

counsel's work product prior to litigation applies with equal force to the work product of the party's other representatives, including private investigators." *Id*. (internal quotation marks and citation omitted). However, the protection afforded by the attorney work product doctrine can be overridden when the requesting party "has a 'substantial need' of the document and is unable to obtain the 'substantial equivalent' without 'undue hardship.'" *Id*. (quoting *Transit Authority of River City v. Vinson*, 703 S.W.2d 482, 486 (Ky. Ct. App. 1985)).

. . . [T]he Court disagrees with Defendants that through the April 19, 2018, Joint Notice, KRS voluntarily disclosed the documents. However, KRS has demonstrated that the documents were prepared by or at the direction of KRS's attorneys in anticipation of litigation. A plain viewing of the documents makes clear that the documents are attorney work product as the documents are trial strategy for the ongoing Mayberry litigation. Additionally, the Mayberry litigation was pending when the emails were exchanged, and the Litigation Packet was clearly prepared in anticipation of litigation at the direction of KRS's attorneys.

R. at 1156-58. The court further found that the Defendants had failed to demonstrate "substantial need" and "undue hardship" if unable to inspect the documents. *Id*. Because the court found that the documents were not subject to disclosure under the Open Records Act as attorney work product, it declined to address the parties' additional arguments regarding common interest privilege under KRE 503, settlement communications privilege under KRE 408, and the preliminary document exception under KRS 61.878(1)(i) and (j). This appeal followed.

-10-

Most recently, while this appeal was pending before us, the Kentucky Supreme Court held that the *Mayberry* Plaintiffs lacked constitutional standing to maintain suit against the eleven KRS trustees and officers and against the third parties who did business with KRS, including the actuarial and investment advisors, hedge-fund sellers, and their executives; as a result, the Supreme Court remanded the case to the circuit court with directions to dismiss the *Mayberry* Plaintiffs' complaint in its entirety. *See Overstreet v. Mayberry*, 603 S.W.3d 244 (Ky. 2020). While the *Overstreet* opinion may have the practical effect of ending the present dispute in the sense that Appellants may no longer have a need or desire for the requested documents, it does not technically moot this appeal because the Open Records Act action KRS filed in circuit court is a separate, original action that exists apart from the *Mayberry* action.

## II. STANDARD OF REVIEW

The circuit court is not bound by the prior OAG opinion, nor is it limited to the OAG's evidentiary record. KRS 61.882(3). The burden of proof in an Open Records Act circuit court action is on the agency seeking to withhold the records being sought. *Com., Cabinet for Health and Family Servs. v. Lexington H-L Servs., Inc.*, 382 S.W.3d 875, 883 (Ky. App. 2012). On appeal, we review a circuit court's factual findings concerning a state agency's withholding of requested documents for clear error and matters concerning the construction of the

-11-

Open Records Act *de novo*. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019); *Commonwealth v. Chestnut*, 250 S.W.3d 655, 660 (Ky. 2008).

### III.   ANALYSIS

The Open Records Act, KRS 61.871, states in pertinent part:

> [T]hat the basic policy of [the Open Records Act] is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others.

Under Kentucky's Open Records Act, "records that are open are open to 'any person' for any purpose." *Kentucky New Era, Inc. v. City of Hopkinsville*, 415 S.W.3d 76, 85-86 (Ky. 2013) (quoting KRS 61.872(1)). While there are exceptions to disclosure of some public information, they are strictly construed, and the burden is upon the agency to identify "the specific exception authorizing the withholding of the record and a brief explanation of how the exception applies to the record withheld." KRS 61.880(1); *see* KRS 61.871. Generally, "[t]he statute demonstrates a general bias favoring disclosure." *Hardin Cty. Schools v. Foster*, 40 S.W.3d 865, 868 (Ky. 2001) (citing *Kentucky Bd. of Exam'rs of Psychologists and Div. of Occupations and Professions, Dep't for Admin. v. Courier-Journal*, 826 S.W.2d 324 (Ky. 1992)).

The Kentucky Supreme Court laid out the analysis for determining whether requested documents ought to be disclosed:

> In evaluating an open records request, the test is as follows. If the requested materials are not specifically excluded from disclosure (under KRS 61.878(l)(a)-(n), or other applicable statutes), then the public agency must provide the materials. If one of the fourteen exemptions applies, then the public agency should deny the request. However, a court of competent jurisdiction, upon request, can nevertheless grant disclosure of any document the agency refused to produce, with one qualification: if the document "pertain[s] to civil litigation" the court cannot order disclosure "beyond that which is provided by the Rules of Civil Procedure governing pretrial discovery."

*Dep't of Revenue, Fin. & Admin. Cabinet v. Wyrick*, 323 S.W.3d 710, 714 (Ky. 2010) (footnote omitted). The *Wyrick* Court held that a circuit court must first consider whether an open records exception applies before determining whether a civil litigation limitation applies to exclude the material in question. *Id.* In the present case, the circuit court erred in failing to apply the *Wyrick* test and instead considered whether the work product doctrine applied before evaluating any Open Records Act exemptions. However, because our review is *de novo*, we will address both the preliminary documents exemption and the work product doctrine.

   *a) Open Records Exemptions*

KRS asserts that the withheld records should also be exempted under the "preliminary" exemptions of KRS 61.878(1)(i) and (j), which exempt "drafts, notes, [and] correspondence with private individuals . . . ." Under the Open

-13-

Records Act, documents of a "an internal, preliminary and investigatory" nature are protected unless they are incorporated, either explicitly or implicitly, into a final action. *Univ. of Kentucky v. Lexington H-L Servs., Inc.*, 579 S.W.3d 858, 863 (Ky. App. 2018), *review denied* (Aug. 21, 2019). The preliminary documents exemptions under the Open Records Act "are intended to protect the integrity of the agency's internal decision-making by encouraging the free exchange of opinions and recommendations. They have thus 'been interpreted to authorize nondisclosure of preliminary reports and memoranda containing the opinions, observations, and recommendations of *personnel within an agency*.'" 02-ORD-199 (emphasis added).

Although Kentucky's courts have not yet dealt with the issue of whether preliminary documents must be produced internally by an agency, there have been several opinions of the Attorney General that have addressed the issue. While opinions of the Attorney General are not binding, we consider them "highly persuasive." *Palmer v. Driggers*, 60 S.W.3d 591, 596 (Ky. App. 2001) (quoting *York v. Com.*, 815 S.W.2d 415, 417 (Ky. App. 1991)). In a 2017 decision, the OAG opined upon the legality of the City of Taylorsville withholding responses to ethics complaints as preliminary. The City argued that the records in question were "preliminary drafts of responses in regard to an ethics complaint

-14-

investigation, [sic] and are exempt under KRS 61.878(1)(j)." 17-ORD-092.

However, the OAG disagreed, stating:

> KRS 61.878(1)(j) exempts "preliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended." The responses to the ethics complaint sent by city commissioners *are not preliminary recommendations or memoranda of the City*; they are the final responses of the targets of the complaints. As such, they are not preliminary.

*Id*. (emphasis added).

KRS has continued to rely on the sentiment that allowing Prisma to inspect the withheld records would set a dangerous precedent jeopardizing the integrity of agencies' internal decision-making processes. Indeed, it premised a large portion of its argument on this front on the idea that the withheld documents reflect KRS's internal decision-making process. We fail to see how the records at issue – emails between opposing parties to the *Mayberry* action and an overview document drafted by the *Mayberry* Plaintiffs' counsel – are internal to KRS. KRS acknowledges that the records were not created by KRS but rather the *Mayberry* Plaintiffs' counsel. KRS admits that the *Mayberry* Plaintiffs' counsel is not its own counsel. Additionally, the documents were not created at KRS's direction. A review of the documents makes clear that they were created by counsel for the *Mayberry* Plaintiffs' benefit. Accordingly, the withheld documents cannot be deemed internal to KRS, and we need not address any issues regarding final action.

-15-

We conclude that the withheld documents do not qualify as preliminary documents and therefore proceed to the second step of the *Wyrick* test.

*b) Work Product*

According to the attorney work product doctrine, "the court 'shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.'" *Hiatt v. Clark*, 194 S.W.3d 324, 329 (Ky. 2006) (quoting CR 26.02(3)(a)). The work product doctrine was first established in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), as a tool to grant attorneys some "free[dom] from unnecessary intrusion by opposing parties and counsel." *Vinson*, 703 S.W.2d at 486. Our Court has previously recognized that this doctrine has been incorporated into the exemptions of the Open Records Act so that "the explicit provisions of KRS 61.878 protect the documents containing these privileged communications from compulsory disclosure." *Hahn v. Univ. of Louisville*, 80 S.W.3d 771, 776 (Ky. App. 2001).

Under CR 26.02, a two-step analysis is necessary to determine if particular documents are discoverable: (1) the court must determine whether the document was prepared in anticipation of litigation by a party or its representative and is therefore subject to privilege; and (2) if the court deems the document to be work product, it must determine whether the requesting party has a "substantial

need" of the document and cannot obtain the substantial equivalent without undue hardship. *Duffy*, 289 S.W.3d at 558. Significantly, "[t]he policy of protecting counsel's work product prior to litigation applies with equal force to the work product of the party's other representatives, including private investigators." *Id.* at 559. Therefore, a document must not necessarily be created by the withholding party's attorney to be work product, although it must be created by a related representative.

Here, litigation was clearly not just impending, but ongoing. The March emails were sent and received, and the litigation packet was prepared and presented during the course of the *Mayberry* litigation. Because the documents pertain to the *Mayberry* action, they were unquestionably created "in anticipation of litigation." *See* CR 26.02(3)(a).

However, we cannot say that these documents were created by KRS's counsel or by its representative. It would be incredible to construe this rule in favor of withholding documents exchanged between adversarial parties amidst litigation. Indeed, the work product doctrine was meant to protect parties from being forced to "hand over the result of his work to an opponent." *Vinson*, 703 S.W.2d at 486. The *Mayberry* Plaintiffs named KRS as a nominal defendant, and KRS declined to align with them and pursue the claims created by the *Mayberry* case. KRS openly admitted that the *Mayberry* Plaintiffs' contingency-fee counsel

-17-

are not counsel for KRS, providing in its Joint Notice that the *Mayberry* Plaintiffs performed "legal and investigatory work" in connection with the *Mayberry* action "without any compensation or assistance from KRS . . . ." R. at 752. Moreover, there is nothing in the record to suggest that the *Mayberry* Plaintiffs' counsel was acting as KRS's representative. No precedent exists to support the position that work product created by one party and turned over to its opponent can be the work product of the adverse party.

The circuit court stated that, contrary to the Appellants' argument, "the *Mayberry* litigation was pending when the emails were exchanged, and the Litigation Packet was clearly prepared in anticipation of litigation at the direction of KRS's attorneys." R. at 1157-58. Upon thorough examination of the record, however, we conclude that the record is entirely devoid of any evidence that such materials were prepared at the direction of KRS's attorneys or necessarily for its benefit. A review of the documents contradicts this notion. The documents were clearly created by the *Mayberry* Plaintiffs' counsel for their benefit and not at KRS's direction. Therefore, we find that the withheld documents fail to qualify as KRS's work product upon the first step of analysis under CR 26.02.

c) *Common Interest and Settlement Privileges*

In the alternative, KRS contends that the withheld records are protected by both the common interest privilege of KRE 503(b)(3) and the

-18-

settlement privilege of KRE 408. The common interest privilege extends attorney-client privilege to situations involving "representatives of the client, representatives of the attorney, and between lawyers on matters of common interest." TRIAL HANDBOOK FOR KY. LAW. § 28:2 (2019 ed.). Under KRE 503(b)(3):

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client:
>
> . . .
>
> By the client or a representative of the client or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein[.]

The Kentucky Supreme Court expounded upon KRE 503(b), providing that "[f]or the privilege to attach, the statement must be a confidential communication made to facilitate the client in his/her legal dilemma and made between two of the four parties listed in the rule: the client, the client's representatives, the lawyer, or the lawyer's representatives." *Haney v. Yates*, 40 S.W.3d 352, 354 (Ky. 2000).

Because of the scarcity of Kentucky case law on the common interest privilege, KRS cites to a number of other jurisdictions in presenting its argument for asserting the privilege. However, in our review of federal case law, we note that the common interest doctrine does in fact take into consideration the

-19-

adversarial nature of the parties communicating and the timing of their communications.

There are three situations in which the common interest exception is deemed to apply: (1) "a single attorney representing multiple clients in the same matter"; (2) multiple parties, although represented by separate counsel, share the same defense; and (3) two or more clients share a common legal interest and share legal advice regarding that interest regardless of whether a lawsuit is actually pending or will ever be pending. *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219-20 (W.D. Ky. 2006). There must be more than a "commercial, rooting interest" between parties to amount to a common legal interest. *In re Simplexity, LLC*, 584 B.R. 495, 499 (Bankr. D. Del. 2018). "So long as transferor and transferee [of information] anticipate litigation *against a common adversary* on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts." *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (emphasis added). "[T]he common interest rule is concerned with the relationship between the transferor and the transferee *at the time* that the confidential information is disclosed." *In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 159 F.R.D. 307, 314 (D.D.C. 1994) (emphasis added).

It is unquestionable that the withheld communications did not occur within any of these confines. Neither the *Mayberry* Plaintiffs nor their contingency-fee legal counsel can "facilitat[e] the rendition of professional legal services to" KRS, ruling out the first option.[7] Instead, KRS contends that it falls under the third category, claiming a common legal and financial interest with the *Mayberry* Plaintiffs in what effectually amounts to the Plaintiffs' hypothetical financial recovery. However, at the time the withheld communications occurred, KRS and the *Mayberry* Plaintiffs could not have had the same legal interest. KRS has maintained its position that it was adverse to the *Mayberry* Plaintiffs prior to the April 19, 2018, Joint Notice, thereby confirming that they were in fact adverse parties at the time the withheld records were created and shared with KRS in March 2018. It was only on April 19, 2018, that KRS stated in the Joint Notice that it "believes that it is in the best interests of [KRS] for [the *Mayberry*] Plaintiffs to continue their pursuit of these claims on a derivative basis on [KRS's] behalf." R. at 80-81. KRS and the *Mayberry* Plaintiffs did not have a common interest at the time of their communications, as they were adversarial parties and shared nothing more than a "rooting interest" in the *Mayberry* Plaintiffs' potential award.

---

[7] The Commonwealth of Kentucky has adopted the Model Procurement Code as codified by KRS 45A, which "appl[ies] to every expenditure of public funds by this Commonwealth and every payment by contingency fee under any contract or like business agreement[.]" KRS 45A.020(1). The *Mayberry* Plaintiffs' legal counsel is contingency-fee-based representation and therefore cannot possibly represent KRS on the same terms as well without violating KRS 45A. We will not construe such a representation arrangement on behalf of KRS.

-21-

Moreover, KRS confirms that adversarial posture, relying on it to additionally invoke a settlement privilege over the withheld records under KRE 408.

> There are three types of evidence excluded by KRE 408: (1) offers to compromise disputes; (2) settlements of disputes; and (3) statements of fact made or conduct occurring during the course of settlement negotiations. There are also two basic requirements prerequisite to any invocation of the KRE 408 rule of exclusion. First, the rule requires the existence of a dispute as to the validity or amount of a specific claim. Second, the rule requires an effort to settle the dispute by agreement to avoid extending the rule of exclusion to casual conversation or statements made for some other purpose than settlement.

*Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 854 (Ky. 2016) (footnotes omitted). Aside from alleging that the withheld documents amount to communications between "significantly disagreeing parties," KRS has offered no further argument as to why these documents are settlement communications. We have carefully reviewed the documents. There is not even a hint of settlement within those documents. We therefore hold that neither the settlement privilege nor the common interest privilege protects the withheld documents from disclosure.

### d) Attorneys' Fees

Finally, the Appellants claim that they are entitled to attorneys' fees under KRS 61.882. Under KRS 61.882,

-22-

> [a]ny person who prevails against any agency in any action in the courts regarding a violation of KRS 61.870 to 61.884 may, upon a finding that the records were *willfully* withheld in violation of KRS 61.870 to 61.884, be awarded costs, including reasonable attorney's fees, incurred in connection with the legal action.

KRS 61.882(5) (emphasis added).

While KRS's failure to comply with the Open Records Act must surely have been frustrating for the Appellants, its withholding of the documents was not willful. In order to award the Appellants attorneys' fees, proof must be offered "showing that the agency's actions were [willful] or that the failure damaged [the Appellants] in any way." *Lang v. Sapp*, 71 S.W.3d 133, 135 (Ky. App. 2002).

Here, there is no evidence that KRS acted in anything but good faith. In its first response to the Appellants' open records request, KRS explained that it withheld documents due to their "preliminary" nature under KRS 61.878(1)(i) and (j). In response to the Appellants' second request, KRS produced some nonexempt records and provided an additional explanation for withholding the remainder. Although the parties disagree as to the exemption status of the documents, it cannot be said that KRS willfully withheld the documents. *See Bowling v. Lexington-Fayette Urban Cty. Gov't*, 172 S.W.3d 333, 343 (Ky. 2005) ("A public agency's mere refusal to furnish records based on a good faith claim of a statutory

exemption, which is later determined to be incorrect, is insufficient to establish a willful violation of the Act.").

## IV. CONCLUSION

In light of the foregoing, we reverse the circuit court's judgment and remand this matter for further proceedings including production of the documents.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Barbara B. Edelman
Grahmn N. Morgan
John M. Spires
Lexington, Kentucky

*AMICUS CURIAE* BRIEF FOR
KENTUCKY OPEN GOVERNMENT
COALITION, INC.:

Amye Bensenhaver
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Paul C. Harnice
Louisville, Kentucky

Christopher E. Schaefer
Louisville, Kentucky

Sarah J. Bishop
Louisville, Kentucky

Andrew T. Hagerman
Louisville, Kentucky