RENDERED: APRIL 23, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0524-DG

KENTUCKY DEPARTMENT OF FISH AND          APPELLANT
WILDLIFE RESOURCES COMMISSION


ON REVIEW FROM COURT OF APPEALS
V.         NOS. 2022-CA-0170 & 2022-CA-0192
FRANKLIN CIRCUIT COURT NO. 21-CI-00680


KENTUCKY OPEN GOVERNMENT          APPELLEE
COALITION, INC.

AND

2024-SC-0275-DG


KENTUCKY OPEN GOVERNMENT         CROSS-APPELLANT
COALITION, INC.


ON REVIEW FROM COURT OF APPEALS
V.         NOS. 2022-CA-0170 & 2022-CA-0192
FRANKLIN CIRCUIT COURT NO. 21-CI-00680


KENTUCKY DEPARTMENT OF FISH AND       CROSS-APPELLEE
WILDLIFE RESOURCES COMMISSION


**OPINION OF THE COURT BY JUSTICE THOMPSON**

**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING**

We are reviewing the resolution of an open records request. The

Kentucky Department of Fish and Wildlife Resources Commission (the

Commission) and the Kentucky Open Government Coalition (KOGC) each

appeal from the portion of the Court of Appeals' opinion which was determined contrary to their positions. We conclude that private records in the exclusive ownership and control of individual Commission members and former members[1] on their private cell phones and in their private email accounts are not "public records" held by a "public agency" for purposes of the Open Records Act (ORA), Kentucky Revised Statutes (KRS) 61.870 *et seq.* which must be disclosed in response to an open records request.

## I. FACTUAL AND LEGAL BACKGROUND

On August 10, 2021, the KOGC made open records requests from the Commission seeking:

> All emails and text messages that were sent from 1 June 2020 to present time, between any 2 or more of the following individuals listed: Rich Storm (former Commissioner KDFWR), Brian Clark (deputy commissioner/acting commissioner KDFWR), KDFWR Commission Chairman- Karl Clinard, Jeff Eaton (past 6th district commissioner), KDFWR Commission members, [and elected members to the legislature] Representative C. Ed Massey and Representative Matthew Koch.
>
> Please note that this request is **not limited** to communications that took place on government-owned email accounts and cell phones . . . .

The Commission responded promptly, producing some 400 documents on August 17, 2021; it also recommended seeking such correspondence from Representative Massey's and Representative Koch's offices and provided mailing and email addresses for them. The Commission provided a second

---

[1] As it is cumbersome to repeatedly be referring to current and former Commission members, we will generally just refer to both groups as Commission members.

release of documents on August 24, 2021, and promised a third release on August 27, 2021.

On August 25, 2021, the KOGC inquired: "Can you please confirm if your search for responsive records includes emails sent or received exclusively on private devices/addresses?" and further noted its understanding that "several commission members use private email to conduct public business[.]" The KOGC attached printouts from the Commission's website which listed the Commission members' private email accounts as their contact information. It is undisputed that the Commission members were not provided with governmental email accounts.

On August 27, 2021, the Commission responded with its final release of responsive documents and expressed its viewpoint consistent with an Attorney General opinion[2] that "documents solely in the possession of individuals on their personal devices are not owned by the Commonwealth and therefore are not 'public records' within the scope of the open records act." The Commission additionally stated: **"Commission members were provided with a copy of your open records request, and were asked to produce any responsive documents which may be contained in their personal email. <u>No such privately owned communications have been provided for the Department's review or release</u>."** (Emphasis added). The Commission further expressed its opinion that individual commission members could not conduct

---

[2] *In re: Brian Mackey/Dep't of Fish and Wildlife*, 21-ORD-127, 2021 WL 3233032 (2021).

any business except when in a public meeting with a quorum and therefore their personal emails and texts were not considered public records to be retained by the Commission.

On September 3, 2021, the KOGC filed suit before the Franklin Circuit Court claiming a willful violation of the ORA on the basis that "the Commission has failed to provide any communications between and among the Commissioners on their private devices or email accounts from which they do all Commission business[.]" The KOGC disagreed with the Commission's justification that these communications on the members' cell phones and email accounts were not public records.

The parties filed competing motions for summary judgment. The trial court ultimately granted in part and denied in part each of the two motions.

The trial court first concluded that public records are not subject to a "possession only approach" under the ORA and determined that all records "used or prepared by an agency fall within the scope of the [ORA], regardless of where the record is stored." The trial court reasoned that because the Commission provided private email addresses as the point of contact for the Commission members, it was logical to presume that emails sent or received by them were "prepared" and "used" by the Commission. The trial court ordered the Commission to produce emails Commission members sent or received from their private email addresses concerning Commission business. The trial court did not explain how the Commission was to obtain such emails from the volunteer Commission members' private email accounts.

4

The trial court reached the opposite conclusion when it came to the Commission members' text messages and other electronic communications sent and received on their private devices. It found that although such communications were public records under the ORA, the exemption found in KRS 61.872(6) was applicable because retrieving and producing those records would be impractical and would place an unreasonable burden on the responding agency as well as invade the Commission members' privacy interests.

Finally, the trial court rejected KOGC's assertion that the Commission has committed a willful violation of the ORA. It held the Commission "at least made a good faith effort" to obtain the requested records by asking the Commission members to provide emails sent or received on their private email accounts. Therefore, the trial court concluded that the statutory penalties provided in KRS 61.882(5) as available for a willful violation were unwarranted.

The Commission and the KOGC both appealed from this mixed result to the Court of Appeals. The Court of Appeals affirmed in part, reversed in part, and remanded to the trial court for further proceedings.

The Court of Appeals agreed with the trial court's assessment that all records prepared and used by a public agency constitute public records which are subject to production. Noting the ORA "generally favors disclosure," it concluded that adopting the possession-only approach to public records advocated by the Commission "would certainly defeat the underlying purpose of the Open Records Act as public officials could easily evade disclosure of

5

public records simply by utilizing their personal cell phones." The Court of Appeals concluded both emails and text messages were subject to production, thereby rejecting the trial court's categorical exclusion of text messages from the ORA. Additionally, the Court of Appeals concluded the trial court erred in finding the request would impose an unreasonable burden on the Commission by relying on generalized concerns and hypothetical scenarios rather than conducting the fact-specific analysis required under the ORA and remanded the matter for the trial court to conduct the appropriate analysis.

The Court of Appeals likewise held the trial court erred in utilizing general privacy interests and theoretical "government overreach" in support of its decision to invoke the exception from disclosure based on a "clearly unwarranted invasion of personal privacy." It concluded the ORA contemplates a fact-specific analysis which balances personal privacy interests with the public interest in disclosure. Thus, a categorical exclusion of text messages found on personal cellphones would be antithetical to the core purpose of the ORA and would encourage public officials to utilize personal devices to "place vital public records beyond the reach of citizens." The Court of Appeals did not explain how the Commission was to obtain responsive emails or texts from the volunteer Commission members' private email accounts or their private cell phones.

Finally, the Court of Appeals agreed with the trial court that the Commission had not committed a willful violation of the ORA. It held the law surrounding open records requests relative "to personal email accounts and

6

text messages stored on personal cell phones was unsettled" and, therefore, statutory penalties were unwarranted.

We granted the Commission's motion and KOGC's cross-motion for discretionary review of the Court of Appeals' decision. We affirm in part, reverse in part, and remand.

## II. ANALYSIS

At the time of its enactment in 1976, the ORA typically applied to stored paper documents, but whether a record exists in paper or electronic form does not change our analysis of whether the ORA applies to require that documents be produced as "public records" held by a "public agency." The fundamental policy of the ORA "is that free and open examination of public records is in the public interest[.]" KRS 61.871.

KRS 61.878(1) excludes access to public records absent a court order on various grounds, including as are pertinent here:

(a) Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy;

. . . .

(s) Communications of a purely personal nature unrelated to any governmental function[.][3]

---

[3] We opt to use the current numbering of KRS 61.878(1)(s), rather than the subsection numbering in effect in 2021.

7

By doing so, the ORA recognizes that there is a right of privacy and that documents of a personal nature or held in the custody of private individuals need not be disclosed.

## A. Records in the Custody of Individual Commission Members Do Not Constitute Public Records of a Public Agency.

The Department of Fish and Wildlife Resources (the Department) is comprised of "a commissioner, a Fish and Wildlife Resources Commission, the Division of Law Enforcement, and other agents and employees provided for in this chapter." KRS 150.021(1). The Commission consists of nine members appointed by the governor and confirmed by the senate, one from each commission district. KRS 150.022(1)-(2).

Both the Department and the Commission each qualify as a "public agency" under several of the broad definitional categories established in KRS 61.870, specifically KRS 61.870(1)(b), (g), and (j). Accordingly, the Department and the Commission must maintain and produce public records pursuant to KRS 61.872. Certainly, records which are available on the Department's servers and its computers which are the result of its employees' and volunteers' work for the Commission can properly be accessed and produced.[4]

The Kentucky Constitution vests the supreme executive power in the Governor. Ky. Const. § 69. The Kentucky Constitution also identifies executive

---

[4] For example, emails from the Commission members' private email accounts which were sent to the Commissioner and other persons with Commission email accounts were available for disclosure pursuant to the ORA and were in fact disclosed in response to the KOGC's request.

state officers in the persons of the Treasurer, Auditor of Public Accounts, Commissioner of Agriculture, Labor and Statistics, Secretary of State, and Attorney-General. Ky. Const. § 91. Below these named officers are inferior state officers who are not specifically identified in the Constitution but instead created by statute. Ky. Const. § 93. Below or at least distinct from inferior state officers are members of boards and commissions.

Section 93 of the Kentucky Constitution, as amended in 1992, provides:

> **Inferior State officers <u>and</u> members of boards and commissions**, not specifically provided for in this Constitution, may be appointed or elected, in such manner as may be prescribed by law, which may include a requirement of consent by the Senate, for a term not exceeding four years, and until their successors are appointed or elected and qualified.

1992 Ky. Acts, Ch. 168 § 12 (S.B. 226) (emphasis added). Prior to this amendment of this section of the Constitution, there was only the category of "inferior state officers." *See Fox v. Grayson*, 317 S.W.3d 1, 5 (Ky. 2010) (detailing this history for other purposes in comparing S.B. 226 with the relevant language contained in our Third and Fourth Constitutions).

Therefore, prior to the 1992 amendment taking effect, members of commissions may have been included as "inferior state officers." For example, in *Sibert v. Garrett*, 197 Ky. 17, 246 S.W. 455, 461 (1922), the Court determined that Section 93 precluded the legislature from appointing members of the state highway commission.

However, the 1992 amendment establishes that "members of boards and commissions" are distinct from "inferior state officers" by placing an "and" between these two categories. If these two groups were meant to both be

considered inferior state officers the amendment could have instead stated "inferior state officers, including members of boards and commissions."

KRS 61.870(1) defines "public agency" as including several distinct groups. One such group is: "Every state or local government officer[.]" KRS 61.870(1)(a). "Every state officer" includes both state officers specifically provided for in the Constitution and inferior state officers that are not named in the Constitution. The Commissioner of the Department is certainly an "inferior state officer."

What "every state officer" cannot include are "members of boards and commissions" as they are excluded from being state officers by the clear wording of our Constitution. Therefore, volunteer members of the Commission do not *individually* qualify as each being a "public agency" under KRS 61.870(1) because these members are not each a "state . . . officer" per KRS 61.870(1)(a), with the concomitant duty to maintain and produce public records under KRS 61.872.

Individual members of the Commission cannot qualify as being a "public agency" based on any other definition. *See* KRS 61.870(1)(b)-(k) (providing that various other governmental units qualify as public agencies, including government departments, commissions, and boards). Likewise, regular employees and volunteers that serve an agency do not qualify as state officers.

Pursuant to KRS 61.870(2), "public record" is defined as meaning: "all books, papers, maps, photographs, cards, tapes, discs, diskettes, recordings, software, or other documentation regardless of physical form or characteristics,

10

*which are prepared, owned, used, in the possession of or retained by **a public agency**.*" (Emphasis added). While the Commission prepares, owns, uses, possesses, and retains various documents which were produced through the actions of its members, employees, and volunteers, including private emails sent to the Commissioner's public email address, what these people do on their own time without using workplace technology (to either produce records or memorialize records privately produced) is simply outside of the Commission's control. Therefore, texts and emails retained by individual Commission members are not constructively public records in the possession of the Commission simply by virtue of the members' volunteer connection to the Commission.

Because these private records are not in the custody of a public agency, this also means that the individual Commission members do not qualify as being the "custodian" of "public records" under KRS 61.870(6). They may have "personal custody and control" of their own texts and emails, but these texts and emails simply do not qualify as public records.

It makes logical sense to treat these individual Commission members differently than the Department, Commission and the Commissioner. The members of the Commission can take no actions individually while engaging in text or email correspondence with non-commission members. Simply put, the Commission members cannot act alone and authoritatively through texts and email, thus the texts and emails they produced and stored were not "prepared, owned, used, in the possession of or retained by a public entity" because the

11

individual members' communications are not those of the Commission. Instead, the Commission members can only officially act when they: meet quarterly as a group in Frankfort and at other times as committees; advise the Commissioner; and approve certain actions of the Commissioner. KRS 150.023(1)-(4).

In *City of Champaign v. Madigan*, 992 N.E.2d 629, 639 (Ill. App. Ct. 2013), the Court recognized that records produced by individual aldermen and city council members do not constitute public records for purposes of Illinois's open records act because the people who make up these groups do not constitute a "public body" unless they are present together in sufficient numbers to constitute a quorum. The Court distinguished the situation where city council members were transmitting private text messages to each other on their private devices during an official city council meeting. The Court concluded that texts they exchanged while they were acting collectively as a public body were subject to disclosure as public records as otherwise the open meetings act would be subverted. *Id.* at 639-40.

Whether public records can be generated on private devices and thus be subject to disclosure under open records acts, depends upon the authority of the person making such records. Therefore, in *In re Silberstein*, 11 A.3d 629, 633 (Pa. Commw. Ct. 2011), the Court ruled that emails stored on a commissioner's personal computer did not qualify as public records because the commissioner was not a governmental entity; he lacked any authority to

act alone on behalf of the Township, he was not authorized to speak for it, and his emails were not later ratified, adopted or confirmed by the Township.

Commission members' actions only result in public records being produced when they act as a body, such as when they meet and vote. In such circumstances, public records are produced by the Commission and maintained by it. Conversely, when individual members are exchanging emails and texts with other people, even if these messages involve the duties of the Commission, the members are not acting for the Commission itself or doing anything that could bind the Commission. Therefore, there is little basis for requiring disclosure of such messages as they do not and cannot result in action by the Commission.

In *Zink v. Commonwealth, Dep't. of Workers' Claims, Labor Cabinet*, 902 S.W.2d 825, 829 (Ky. App. 1994), the Court explained that "the purpose of disclosure focuses on the citizens' right to be informed as to what their government is doing." Thus this "work" would generally be excluded as being "[p]reliminary drafts, notes, correspondence with private individuals" or "[p]reliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended[.]" KRS 61.878(1)(i) and (j).

We decline to legislate from the bench in interpreting the term "public agency" beyond the scope of its clear definition. There is no basis to believe that the General Assembly intended that individual Commission members be

13

treated as public agencies, especially where they had no authority to bind the commission based on their individual actions.

## B. Fears of Possible Deliberate Subversion of the Open Records Act by Purposefully Using Private Devices to Conduct Government Business Requires Another Remedy

Compliance with the ORA always requires that the government act in good faith. While we recognize the concern raised by the Court of Appeals and the trial court that bad actors with nefarious intent may try to subvert the ORA by using private devices to conduct government business, this alleged "loophole" is not an issue before us and cannot justify reclassifying private documents as public ones in contravention of the clear language of the ORA. Absolutely no evidence has been advanced to even suggest that the Commission members were not acting honorably in their volunteer role in serving the people of this Commonwealth and in using the only means available to them to communicate with each other, the Commission, and the public. They used their private email addresses as they were not provided with any alternatives from the Department.[5]

If someone requesting public records has a good faith basis to believe that government actors are seeking to subvert the ORA by deliberately conducting government business on private devices, the solution is not to

---

[5] The Department's website listed the members' email addresses, phone numbers, and addresses. It is unclear whether the phone numbers listed were cell phones, personal landlines, or business landlines. It appears that members' personal email accounts were the primary method they used to communicate with others regarding Commission business.

14

pressure a governmental department to make the individuals working on its behalf give up their private devices and private accounts for inspection, but for the seeker to file a civil lawsuit regarding conspiracy to subvert the ORA against the governmental entities and the officers, members, employees, etc. who are alleged to have participated in such a conspiracy. If there is probable cause that such is occurring, discovery under court supervision can explore this issue, and disputed items can be subject to *in camera* review.

However, in this open records action to compel the release of records, because neither the individual Commission members nor the other third parties (the named legislators) were made parties, the trial court cannot order them to produce responsive records. *See Tracy Press, Inc. v. Super. Ct.*, 80 Cal. Rptr. 3d 464, 471 (Cal. App. 2008) (concluding that to the extent the requester of public records is seeking an order requiring a private individual to produce private emails that are argued to be public records, that individual is a necessary party).

Although the Commission members received notice from the Commission that such records were sought by the KOGC (if only because the Commission wanted them to look through their emails for responsive records), the record does not indicate that the named legislators ever received any kind of notification that their private correspondence with Commission members was the topic of an open records request. While the Commission suggested that such correspondence could be sought from Representative Massey's and Representative Koch's offices, the record does not contain any information that

15

KOGC attempted to contact them. Due process requires notice and an opportunity to be heard before private correspondence can be ordered disclosed through a court proceeding.

This case has exposed the problems inherent in not providing the members of the Commission with the means to conduct the government's business in a way that will automatically create records that the Commission can review and use to respond to open records requests. It would be appropriate for our executive public agencies to proactively change their practices to avoid such problems in the future by providing anyone who acts on their behalf with state email addresses and establishing policies that instruct them to use these email addresses for any government business-related emails.

Certainly, it is within the General Assembly's purview to alter the ORA to, for example, prohibit any government-related correspondence from occurring on private devices, require that all governmental volunteers be issued government email accounts, or declare that each member of a commission should henceforth be deemed to qualify as personally constituting a "public agency" for purposes of the ORA. It is our legislative branch's responsibility to make such decisions, and we will not engage in legislating from the bench simply because the General Assembly has not yet acted.

### III. CONCLUSION

While we recognize the importance of the Open Records Act in allowing for private oversight of the government's actions, the Commission members are

16

categorically excluded from individually having the status of a public agency and thus records in their personal possession cannot qualify as public records.

The Commission properly disclosed all responsive records in its possession. It was not required to do anything to obtain non-public records from the Commission members.

Therefore, we affirm in part, reverse in part, and remand for the Franklin Circuit Court to enter an order granting summary judgment to the Commission and dismissing this action.

Lambert, C.J.; Bisig, Conley, Keller, Nickell, and Thompson, JJ., sitting. Lambert, C.J.; Bisig, and Conley, JJ., concur. Nickell, J., dissents by separate opinion in which Keller, J., joins. Goodwine, J., not sitting.

NICKELL, J., DISSENTING:  Respectfully, I dissent.  The majority begins with a seemingly correct, elementary, and innocuous proclamation that private records in the hands of private individuals on their private devices and accounts are not public records.  With this sentiment, I can wholeheartedly agree.  Indeed, the ORA is not concerned with an individual's private affairs.[6] However, the majority ultimately conflates and contorts the issue to conclude that records created by agents, officials, or employees of a public agency regarding the public's business are somehow transformed into private records not subject to the ORA simply because they are located on non-governmental

---

[6] Certainly, KRS 61.878(1)(a) specifically excludes any public records containing personal information where the public disclosure of same would constitute an invasion of personal privacy and KRS 61.878(1)(s) excludes purely personal communications having no relation to government functions.

devices or accounts. In so doing, the majority creates categorical exclusions for email and text messages not contained on government-controlled servers, accounts, or devices, and thereby adopts a "possession-only" approach to the ORA which is antithetical to its core purpose. Furthermore, the majority's conclusion that individual Commission members do not themselves qualify as a "public agency" is a transparent attempt to sidestep the inconvenient truth that "state agencies perform their governmental functions by and through their agents, servants, and employees." *Williams v. Ky. Dept. of Educ.*, 113 S.W.3d 145, 154 (Ky. 2003). Under traditional notions of principal-agent law, for information to constitute a public record, an agent, servant, or employee must prepare, own, use, or retain it within the scope of employment, such as when the job requires it, the employer directs it, or it furthers the employer's interest. By holding records created by the Commission members about Commission business are not subject to the ORA, the majority eviscerates the public's right to know what its government is doing. Contrary to its lofty proclamations otherwise, the majority is, in fact, "legislat[ing] from the bench" by creating new classes of exempt persons and records which have never before existed under the ORA. I cannot countenance such a result. Additionally, while not discussed in any way by the majority, I conclude genuine issues of material fact existed so as to preclude the trial court's grant of summary judgment. Thus, I dissent and would affirm the Court of Appeals.

18

When enacted in 1976,[7] the ORA was originally designed to cover paper documents which were typically stored in filing cabinets, boxes, or other similar repositories.  Since that time, incredible unforeseen advances have occurred in technology and communications, and the advent and proliferation of electronic document storage and communications has changed the public records landscape.  Electronic communications have now become ubiquitous, which requires a recognition that, at present, not all government-related activity occurs during a conventional workday or in a government-maintained workplace.  No longer do documents require a tangible medium or a physical repository to exist.  The use of private email accounts, mobile electronic devices, and various digital communication platforms to conduct official business has become commonplace.  "However, the ease and immediacy of electronic communication has encouraged a commonplace tendency to share fleeting thoughts and random bits of information, with varying degrees of import, often to broad audiences.  As a result, the line between an official communication and an electronic aside is now sometimes blurred." *City of San Jose v. Super. Ct.*, 389 P.3d 848, 853 (Cal. 2017).

Nevertheless—and as will be discussed further below—despite technological advances, the basic premise of what constitutes a public record

---

[7] An earlier version of an open records law had been passed by the legislature in 1974 but was vetoed by then-Governor Wendell Ford due to a perceived inadequacy of protection for information of a personal or private nature.

under the ORA has not changed.  Whether a record exists in paper or electronic form does not change the analysis.

Following our predecessor Court's decision in *City of St. Matthews v. Voice of St. Matthews, Inc.*, 519 S.W.2d 811 (Ky. 1974), which concluded most public records should be and are open to public inspection, the General Assembly enacted the ORA, thereby evincing its intent relative to the public's right to inspect public records.  The fundamental policy of the ORA "is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others."  KRS 61.871.  "At its most basic level, the purpose of disclosure focuses on the citizens' right to be informed as to what their government is doing."  *Zink v. Commonwealth, Dep't of Workers' Claims, Lab. Cabinet*, 902 S.W.2d 825, 829 (Ky. App. 1994).  In essence, public records, created in any format, physical or otherwise, are the people's records, and the officials in whose custody and control they happen to be, are merely trustees for the people.

However, we have previously declared wide-ranging effectuation of the fundamental policy upon which ORA is founded is not unbridled and without bounds.  "Although the general policy [of the ORA] favors broad availability of public records, that availability is not unlimited."  *Commonwealth v. Chestnut*, 250 S.W.3d 655, 664 (Ky. 2008).  "Perhaps the main exception to the general presumption that public records are subject to public inspection is contained

20

in KRS 61.872(6), which provides that an otherwise valid open records request may be denied if complying with it would cause 'an unreasonable burden[.]'" *Id.* The determination of whether a request falls under the unreasonable burden exception is highly fact-specific and requires a case-by-case analysis. "The statute contemplates a case-specific approach by providing for de novo judicial review of agency actions[.]" *Ky. Bd. of Exam'rs of Psychs. and Div. of Occupations and Pros., Dep't for Admin. v. Courier-Journal and Louisville Times Co.*, 826 S.W.2d 324, 328 (Ky. 1992). An agency must present "clear and convincing evidence" to sustain a refusal to comply with a request based on an unreasonable burden. KRS 61.872(6). Again, the far-reaching legislatively enacted provisions of Kentucky's ORA were not left unbridled, and courts administer the reins of statutory exceptions, as necessary, to ensure the statute's intentional breadth does not exceed its limits.

KRS 61.878 sets forth numerous additional categories of public records which are exempt from disclosure. The only category from that statute which is pertinent to this appeal is the exemption of records containing personal information when the disclosure thereof "would constitute a clearly unwarranted invasion of personal privacy." KRS 61.878(1)(a). Making such a determination requires courts to undertake a "comparative weighing of antagonistic interests" which balances an individual's privacy interest in nondisclosure against the generally accepted legislative policy of inspection and openness of public records. *Ky. Bd. of Exam'rs*, 826 S.W.2d at 327. Such an analysis must necessarily proceed on a case-by-case basis. *Id.* at 328 ("[T]he

21

question of whether an invasion of privacy is 'clearly unwarranted' is intrinsically situational, and can only be determined within a specific context.").

In pertinent part, KRS 61.870(2) defines "Public record" broadly as "all books, papers, maps, photographs, cards, tapes, discs, diskettes, recordings, software, or other documentation regardless of physical form or characteristics, which are prepared, owned, used, in the possession of or retained by a public agency." In the instant matter, it is undisputed the Commission is a public agency subject to the ORA under the definition in KRS 61.870(1)(b) ("Every state or local government department, division, bureau, board, *commission*, and authority[.]") (emphasis added).

The threshold issue presented today is whether the location of an electronic record on a personal device or account prevents it from being classified as a public record. If not, it must be determined whether the trial court correctly concluded the unreasonable burden[8] and unwarranted invasion of privacy exemptions are applicable. In ORA cases, "[w]e review the trial court's factual findings, if any, for clear error, but our review is plenary of issues concerning the construction or application of the [Act]." *Kentucky New Era, Inc. v. City of Hopkinsville*, 415 S.W.3d 76, 82 (Ky. 2013) (citing *Chestnut*, 250 S.W.3d 655). Because this case was decided on summary judgment and

---

[8] Curiously, the majority makes only a passing mention of this portion of the trial court's decision and provides no analysis thereof, even though the issue has been litigated extensively.

22

the issues raised on appeal are purely matters of law, our review is de novo.

*Patton v. Bickford,* 529 S.W.3d 717, 723 (Ky. 2016).

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Hammons v. Hammons,* 327 S.W.3d 444, 448 (Ky. 2010) (internal citations and quotation marks omitted). Further, this Court need not address policy considerations as such matters reside solely within the province of the General Assembly and therefore, I cabin my discussion to the appropriate legal analysis.

The Commission first asserts the records sought by KOGC do not qualify as public records because documents created or housed on personal devices and accounts cannot technically be termed "public records" because they are not prepared by and are not held in the possession of the Commission. It further contends because no government funds were expended to procure private cellphone services, private email accounts, or devices, any communications involving such devices or accounts are purely personal and any documentation stored thereon may not reasonably be considered in the possession or control of the Commission. I disagree.

It is axiomatic that "state agencies perform their governmental functions by and through their agents, servants and employees." *Williams*, 113 S.W.3d at 154. It would be problematic, to say the least, to accept the Commission's position that an agency lacks a legal right to obtain responsive records created and maintained by its own officials and employees simply because those records do not reside on or in a government-owned device or repository. Yet the majority has done just that. Such a "possession-only" approach to public records will invariably lead to less transparency, place an increasing amount of information outside the reach of the public, encourage government employees and officials to conduct the public's work in private, and thereby undermine the purposes of the ORA. A government agency cannot be permitted to allow its servants to generate public records utilizing private communications mediums and subsequently refuse to produce those records upon request under the guise of a lack of control. If that were the law, government agencies could easily evade their ORA obligations by removing government email addresses or other publicly funded channels of communication, resulting in an end run around the ORA's basic purpose of ensuring an informed citizenry which can hold its public servants accountable.

Indeed, I discern no viable reason to treat text messages and emails[9] created, received, or stored on private devices and accounts differently from

---

[9] Although not currently in issue in the instant appeal, communications on other digital messaging platforms and applications such as Facebook Messenger, Snapchat, WhatsApp, Signal, Telegram, Teams, Slack, Confide, and numerous others

those passing through official government channels when the subject of the documents touches on state business. "The creation of a record of communications about the public's business is no less subject to the public's access because it was transmitted over a private communications medium than it is when generated as a result of having been transmitted over a publicly controlled medium." *Bradford v. Dir., Emp. Sec. Dep't,* 128 S.W.3d 20, 28 (Ark. Ct. App. 2003). This approach is consistent with well-established Kentucky law because

> [t]he public's "right to know" under the Open Records Act is premised upon the public's right to expect its agencies properly to execute their statutory functions. In general, inspection of records may reveal whether the public servants are indeed serving the public, and the policy of disclosure provides impetus for an agency steadfastly to pursue the public good.

*Ky. Bd. of Exam'rs,* 826 S.W.2d at 328.

It cannot be disputed that the Commissioners have custody or control over text messages and emails stored on their personal cellphones and private email accounts. And, because the Commissioners are either agents or officials of the Commission, the use of personal cellphones or email accounts does not alter the conclusion that they are acting on behalf of the Commission when communicating regarding Commission business. The majority's attempt to exclude the Commissioners from application of the ORA by determining they

---

would likewise qualify as public records if the subject matter concerned the public's business.

25

are not, in and of themselves, a public agency is a red herring and misses wide of the mark.

Indeed, the flaw in the majority's logic is belied by its own admission that records created by the Commission's employees and volunteers—which plainly includes the individual Commissioners—are public records subject to the ORA so long as those records reside on government servers and its computers. Yet, the majority takes an opposite view when it comes to private devices because it contends the Commissioners cannot act or bind the Commission unless they are meeting as a group, and it is only in that setting that public records can be produced. The internal inconsistency in its positions is both shocking and illuminative of the lengths the majority has gone in its misguided effort to undermine the core purpose of the ORA based on its even more misguided effort to exercise the exclusively legislative function of setting public policy. Whether individual Commissioners can bind the agency is of no moment. It is the very work product they create in the performance of their duties for a public agency which is subject to the ORA.

It stands to reason that if a record generated by a Commissioner is public and subject to production in the first instance, the discussion of whether that same Commissioner does or does not qualify as a "public agency" is a superfluous and thinly veiled attempt to reach a desired result.[10] And I

---

[10] The majority's discussion on this point is much ado about nothing and serves only as bluster to mask the flawed logic upon which its position is based. A request under the ORA is directed at the agency itself, and it is the agency which must qualify as a "public agency," not each and every one of its employees, agents, servants,

believe that result will lead to far-reaching and unintended consequences because under the majority's analysis, any public record may be excluded under the ORA and miraculously transformed into a private record so long as it is taken "off-line" from government-controlled servers, devices, and accounts. Extending the majority's logic to its conclusion, the removal from government premises of paper documents, computer diskettes, audio and video recordings, or any other physical media would likewise change the character of those otherwise public records so long as they are stored in a non-governmental repository. Such an absurd result is contrary to the law and ignores that the definition of public records in KRS 61.870(2) is not limited to only records in the possession of the agency, but also includes those records "prepared, owned, used, in the possession of or retained by [the] public agency." The words of a statute mean something, and "[w]here the legislature has defined a term or phrase . . . the courts are not free to ignore it." *Jenkins v. Commonwealth*, 496 S.W.3d 435, 455 (Ky. 2016). Yet, by adopting a "possession-only" approach, the majority does just that.

Thus, I would conclude that emails and text messages transmitted or received by a public servant that involves the public's business are public records subject to public access under the ORA, regardless of whether transmitted using personal devices or email addresses through private internet

---

or volunteers. The majority has simply fashioned this issue from whole cloth in an attempt to confuse the real issues.

27

providers, or sent to or from official government email addresses, other official communications platforms, or on government funded devices.[11]

A contrary holding or interpretation would render the plain terms of the ORA ineffective. Indeed,

> [r]eports of public officials using personal accounts or devices to conduct official business and, at times, to evade disclosure regulations have become the subjects of public discourse. *See, e.g.*, Steve Zansberg, *Cloud-Based Public Records Pose New Challenges for Access*, 31 Comm. Law. 12, 12 (2015) (collecting reports); Daniel [Pitcairn] & Zoe Grotophorst, *The State of Internal Workplace Communication*, Government Executive (March 5, 2015), https://www.govexec.com/insights/state-internal-workplace-communication/106737/ (reporting that 33% of 412 government employees surveyed used personal email for government business).
>
> In an environment of widespread use of personal devices for official work, there is danger of an incentive to shunt critical and sensitive communication away from official channels and out of public scrutiny, with decisions to forward the communications to official record repositories postponable at the whim of the public official.

*Brennan Ctr. for Just. at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 377 F. Supp. 3d 428, 436 (S.D.N.Y. 2019). Such practices are plainly at odds and

---

[11] My position does not plow new ground. Notably, over a decade ago, the National Archives and Records Administration, which issues guidance for federal agencies relative to their responsibilities under the federal Freedom of Information Act, issued a bulletin listing text messages, instant messages, voicemail messages, and communications created using other digital message platforms as federal records, even when such messages are created or sent to personal devices or accounts. The Bulletin provides that

> [e]mployees create Federal records when they conduct agency business using personal electronic messaging accounts or devices. This is the case whether or not agencies allow employees to use personal accounts or devices to conduct agency business. This is true for all Federal employees regardless of status. This is also true for contractors, volunteers, and external experts.

Bulletin 2015-02, U.S. National Archives & Record Administration (July 29, 2015), https://www.archives.gov/records-mgmt/bulletins/2015/2015-02.html (accessed March 17, 2026).

wholly inconsistent with the core purpose of Kentucky's ORA, which reflects the wisdom of United States Supreme Court Justice Louis Brandeis regarding public transparency and accountability when he famously expressed "[s]unlight is said to be the best of disinfectants; electric light the most efficient policeman." Louis Brandeis, "What Publicity Can Do," *Harper's Weekly*, December 20, 1913.

To be clear, in my view a public official's writings about public business are not excluded from the ORA simply because they have been sent, received, or stored in a personal account. A public record is not limited by its format—print, digital, or otherwise—nor by its location. Rather, it is the nature, content and purpose of the communication which makes it a public record.

However, my analysis cannot end with such an inclusive proclamation. The fact that a communication qualifies as a public record does not automatically mandate that it be open for inspection nor subject to production when requested. Unfortunately, the majority has overlooked this vital distinction in making its broad and categorical determination.

As previously noted, Kentucky's ORA contains numerous exceptions to compulsory disclosure. The Commission advances only two of those exceptions in seeking to avoid producing the records sought by KOGC: unreasonable burden and unwarranted invasion of personal privacy. I conclude that neither applies. Interestingly, and quite tellingly, the majority fails to mention or make any attempt to justify the trial court's ruling relative to the asserted unreasonable burden nor why summary judgment was appropriate under the

29

circumstances.[12] Instead, it rests entirely on its own policy concerns regarding general privacy interests and theoretical "government overreach" in support of its decision to invoke the exception from disclosure based on a "clearly unwarranted invasion of personal privacy."

KRS 61.872(6) exempts public records from disclosure "[i]f the application places an unreasonable burden" upon the public agency. A refusal to comply with a request based on an unreasonable burden must be accompanied by "clear and convincing evidence" of such a burden. *Id.* Even if a large volume of records is at issue, the agency must still make an adequate showing that searching those records constitutes an undue burden. "A record's length, standing alone, is an insufficient reason to exempt it from open records disclosure." *Chestnut*, 250 S.W.3d at 666 (footnote omitted); *see also Dep't of Ky. State Police v. Courier Journal*, 601 S.W.3d 501, 507 (Ky. App. 2020) (rejecting unduly burdensome challenge where records to be searched exceeded 8 million and cost to develop system to review and redact records was $15,000). An agency is not immune from searching its records merely because it will be inconvenient or consume a portion of its limited resources. That is a cost of doing the public's business.

The ORA request at issue in this appeal was narrowly tailored temporally and specifically identified those individuals from whom Commission-related communications were sought. Additionally, it was incontrovertible that official

---

[12] In fact, the term "summary judgment" appears only twice in the majority opinion, once in the procedural history and once in the concluding sentence.

business had been routinely conducted using private devices and accounts because those were the only means of communications publicly listed or available for the Commissioners.[13]  Moreover, the Commission failed to support its assertion that the ORA request was overly burdensome by tendering affidavits to establish an inordinate temporal burden or excessive financial cost associated with the request.  Instead, it gave only generalized and unsupported allegations of statewide implications and relied on a series of handpicked preferential and non-binding opinions of the Attorney General.

Rather than conducting a case-specific analysis, the trial court simply agreed with the Commission that "when considering the sheer number of state employees, officials, volunteers, etc. whose privately-owned cell phones would be subject to open records requests, it would make responding to any such open records requests unmanageable for state agencies."  It further concluded, without providing any analysis, that subjecting private cellphones to the ORA

---

[13]  While the majority proclaims that it is unclear whether the Commissioners' private cell phone numbers were provided as a means of contact and implies that communications regarding Commission business did not occur via text messaging, that assertion is not borne out by the record.  Paragraph 8 of the initiating complaint averred that Commissioners sent and received "all agency-related communications, including emails and *text messages*, on non-government devices and accounts." (Emphasis added).  In its answer, the Commission admitted the allegations of that paragraph to be true.  Also attached to the complaint are screenshots of the Commission's official website which listed the primary contact information for each Commissioner utilizing their private addresses, phone numbers, and email addresses. Based on the Commission's admission, some of the listed phone numbers were undoubtedly for cell phones.  Indeed, even today the Commission's website lists private phone numbers for the Commissioners, at least some of which are for cell phones.

was impractical and would likely lead to "fishing expeditions."[14]  Finally, the trial court found personal cellphones are "not traditionally used, nor should be used, for official business" and that "text messages and other private forms of communications are generally not accepted forms of communications for government business."

However, the trial court's reasoning was fatally flawed as it took a broad view of potential impacts on various government agencies across the Commonwealth as a whole, whereas "the unreasonable burden language in KRS 61.878(6) focuses on a single 'application,' not a group of applications from an entire class of applicants." *Chestnut*, 250 S.W.3d at 665 (footnote omitted).  Additionally, because the Commission presented no evidence to the trial court relative to the burden of the instant request, then, by definition, it did not provide the "clear and convincing evidence" required to sustain a refusal of an ORA request.  KRS 61.872.  Based on the dearth of precise proof establishing an unreasonable burden imposed by the particular ORA request,[15]

---

[14] The trial court's concern about unfettered requests and fishing expeditions would potentially be valid were this a civil or criminal discovery matter.  But it is not.  Open records requests represent a fundamentally different creature of statute concerned with increasing government transparency.  Indeed, the ORA does not require a requestor to give any reason for seeking production of public records.  The requestor can have a valid reason, or no reason at all.  Simple curiosity about how the government functions would suffice.  The fundamental purpose of the ORA is to disseminate information to the public and to expose governmental activity to public scrutiny.  The motivation underlying a citizen's request is, quite simply, irrelevant.  Whatever the reason may be—absent a motivation to disrupt essential government functions or impose an undue burden on the agency, *see* KRS 61.872(6)—it is not a factor in the calculus of determining whether public records must be produced.

[15] There is no allegation that KCOG's request was intended to disrupt any essential functions of the Commission which would warrant refusal to comply with the request.  *See* KRS 61.872(6).

I would affirm the ruling of the Court of Appeals holding the trial court's finding of clear and convincing evidence of an unreasonable burden based on mere generalized assertions was erroneous. I would therefore vacate the trial court's decision and remand the matter for further reconsideration of the facts relative to the particular application at bar.

Next, in support of its grant of summary judgment, the trial court concluded KOGC's ORA request ran afoul of personal privacy interests. The trial court was "highly concerned about government overreach in forcing state employees, officials, and volunteers to hand over their privately-owned devices for the government to browse[,]" believing this would be highly invasive and "would grossly encroach on the private lives of state employees, officials, and volunteers." For this reason, the trial court admonished agencies to instruct employees, officials, and volunteers to refrain from utilizing privately-owned devices in conducting government business. Nevertheless, the trial court created a blanket rule excepting all text messages and other non-governmental communications channels from disclosure under the ORA if those communications are housed on a personal device. As did the Court of Appeals, I would conclude the trial court's determination was erroneous.

Pursuant to KRS 61.878(1)(a), public records may be excepted from disclosure if they contain "information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy[.]" "This exception reflects our society's recognition that 'privacy remains a basic right of the sovereign people[.]'" *Cape Publ'ns, Inc. v. Univ. of*

33

*Louisville Found., Inc.*, 260 S.W.3d 818, 821 (Ky. 2008) (quoting *Bd. of Educ. v. Lexington–Fayette Urb. Cnty. Hum. Rts. Comm'n,* 625 S.W.2d 109, 110 (Ky. App. 1981)).  Application of this exception requires courts to "balance the interest in personal privacy the General Assembly meant to protect, on the one hand, against, on the other, the public interest in disclosure."  *Kentucky New Era,* 415 S.W.3d at 82.  "The public agency that is the subject of an Open Records request, has the burden of proving that the document sought fits within an exception to the Open Records Act."  *Hardin Cnty. Schools v. Foster*, 40 S.W.3d 865, 868 (Ky. 2001) (citations omitted).

My review of the record reveals the Commission offered little more than vague and abstract assertions of general privacy concerns in denying the request, and the trial court relied on these postulations in upholding the denial.  In short, as with its holding relative to the finding of an unreasonable burden, the trial court failed to undertake the requisite case-specific analysis. The majority perpetuates the same error by making global pronouncements unmoored from the facts of the case at bar.

In determining whether the personal privacy exception applies, courts must apply a two-pronged test.  "First, we must determine whether the information sought is of a personal nature.  Second, we must examine whether the public disclosure of this information would constitute a 'clearly unwarranted invasion of personal privacy.'"  *Cape Publ'ns Inc.*, 260 S.W.3d at 821.

Initially, and most compellingly, KOGC specifically stated its request was to be understood to exclude any information of a purely personal nature. Such information is that about which the public would have little to no legitimate interest and which "touches upon the personal features of private lives." *Zink v. Dep't of Workers' Claims*, 902 S.W.2d 825, 828 (Ky. App. 1994). Indeed, KOGC requested only emails and text messages "between any 2 or more" of four named former or current Commission members, two state Representatives, and current Commissioners. The record contains no indication KOGC was requesting personal communications of any kind. Nor did the Commission offer any evidence to the contrary.

Instead, rather than analyze this threshold issue with particularity to the facts presented, the Commission, the trial court, and the majority merely rail against government overreach, point to the "insurmountable" and "unmanageable" burden of searching personal devices for responsive records, and raise the alarmist specter of requiring government employees to "hand over" their devices to a third party for searching or forensic examination. In so doing, all have ignored the required initial inquiry and thereby missed wide of the mark. Because there was no showing that purely personal communications were at issue or subject to the requested disclosure, the trial court's invocation of the "clearly unwarranted invasion of personal privacy" exception was plainly in error. Further, our decision in *Kentucky Bd. of Examiners*, 826 S.W.2d 324, requires an *in camera* inspection of documents for which an exception is claimed.

35

Certainly, public officials, employees, and volunteers possess privacy interests in their personal devices and communications. But where, as here, the requested information touches only on the public's business, no such privacy rights exist. Thus, the Commission was required to request the Commissioners search their private devices for responsive text messages or other communications and produce them. Had such searches resulted in records which contained potentially personal information, a privacy challenge could have been raised.[16] Additionally, I note that *Beckham v. Bd. of Educ. of Jefferson Cnty.*, 873 S.W.2d 575 (Ky. 1994), recognized that while the agency in charge of the records may always assert the ORA's exemptions as bars to disclosure, that same right extends to the citizen whose information is at risk of being disclosed. The individual may seek prevention of disclosure of documents containing information of a personal nature when they would be substantially affected by the disclosure.

Here, because the first prong of the test set forth in *Cape Publications* was not satisfied, it is unnecessary to reach the second step of determining whether any disclosure would be "clearly unwarranted." However, had the trial court received and reviewed documents which contained material of a personal and private nature, it may have then proceeded to analyze such documents to determine whether disclosure would violate the second prong.

---

[16] Likewise, if any of the records contained information potentially subject to one of the other numerous exceptions outlined in KRS 61.878, the Commission could refuse to produce them on those grounds.

Having determined the documents sought by KOGC are "public records" and neither of the asserted exemptions have been shown to be applicable, I would hold it was the duty of the Commission to seek such documents from the individual Commissioners to determine whether they were responsive to the particularized request, not subject to an exception, and subject to production. It was incumbent on the Commission to produce clear and convincing evidence to justify application of any asserted exemption to disclosure, and the trial court should have conducted the appropriate analysis based solely upon the evidence presented as applicable to the particular request made by KOGC.

To be clear, public business is the public's business. Operating on private devices and communications platforms cannot transform the public's business into private matters. If citizens may be deprived of their right to know what their governmental agencies are doing by the simple expedient of maintaining communications channels on private accounts and devices, the essential policy of the ORA to ensure free and open examination of public records would be eviscerated and the entire open records system could devolve into chaos.

Nevertheless, I note there is a difference between a "public record" and an "open record." Although "public" the record may still not be subject to inspection or disclosure. Merely because a request is made, and a device contains documents which may fall under the umbrella of produceable materials, does not necessarily mean all materials contained on that device are automatically required to be produced. There are numerous statutory

37

provisions which exempt certain documents from mandatory production and disclosure. However, there must be a showing of a concrete harm, not merely a hypothetical or speculative risk of harm. It is the duty of the agency to produce proof supportive of any asserted exemption and courts must undertake a case-specific analysis based on the proof presented in determining whether certain documents may be withheld from production.

Since its inception, the ORA has been—and remains—a quasi-honor system wherein the records custodian in receipt of a request for documents asks the named persons or those potentially having responsive documents to search their records for communications fitting under the ORA request and to produce the resulting documents. Those persons potentially having responsive documents have not been required to turn over their devices, filing cabinets, or keys to a storage facility, for a third party to conduct a search. Nothing in my opinion today would change this basic procedure, nor should it be read to say that anyone must turn over their personal cellphones or electronic devices, or provide passwords to private email, communications, or social media accounts for inspection simply because an ORA request is made. Rather, the public official, employee, or volunteer must only perform the necessary search for responsive documents just as they would do with any other physical or digital filing or storage system. Only those public records not subject to a statutory exception are subject to disclosure.

Finally, the ORA is, at its core, primarily a disclosure statute. The General Assembly has declared the public policy underlying the ORA "is that

38

free and open examination of public records is in the public interest." KRS 61.871. The proper function of this Court is not the making or changing of public policy, as such functions are exclusively vested in the legislative branch. "[I]n the absence of constitutional restraint the legislature is omnipotent in dealing with matters of legislation and the courts with matters of a judicial nature." *Lovelace v. Commonwealth*, 147 S.W.2d 1029, 1032 (Ky. 1941). My position today does no violence to the declared policy of the ORA and is based solely on the language chosen by the General Assembly. Should the Commission be dissatisfied with the result, its recourse must come from that body.

In conclusion, I agree with the majority that private records, not touching on public business, are plainly excluded from application of the ORA. I likewise agree that a record is not per se public simply because it is created by a public employee, servant, or official. However, I cannot agree that an otherwise public record is transformed into a private record simply because it does not reside in a government-controlled repository. A categorical exclusion of text messages found on personal cellphones or messages located on private servers or accounts would be antithetical to the core purpose of the ORA and would encourage public officials to utilize personal devices and accounts to place vital public records beyond the reach of citizens. Because the ORA generally favors disclosure, I unreservedly disagree with the majority's adoption of a possession-only approach to public records. Thus, I find the majority's categorical exclusion of the Commissioners from application of the ORA not

only troubling, but also contrary to the law and logic. Finally, based on the record before the Court, I discern that genuine issues of material fact exist, and summary judgment was improvidently granted. "Today's decision will either be seen as a result-oriented outlier or it will change the landscape of [governmental transparency and accountability]. And not for the better." *Cates v. Kroger*, 627 S.W.3d 864, 877 (Ky. 2021) (Nickell, J., concurring in part, dissenting in part). For the foregoing reasons, I dissent.

Keller, J., joins.


COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Charles H. Cassis
Jonathan D. Goldberg
Jan M. West
Anthony R. Johnson
Goldberg Simpson, LLC


COUNSEL FOR APPELLEE/CROSS-APPELLANT:

Michael P. Abate
Jon L. Fleischaker
Kaplan Johnson Abate & Bird LLP


COUNSEL FOR AMICUS CURIAE, UNIVERSITY OF KENTUCKY:

Bryan H. Beauman
Carmine G. Iaccarino
Sturgill Turner Barker & Moloney PLLC

William E. Thro
Shannan B. Stamper
University of Kentucky

COUNSEL FOR AMICUS CURIAE, ATTORNEY GENERAL RUSSELL COLEMAN, AGRICULTURE COMMISSIONER JONATHAN SHELL, AUDITOR ALLISON BALL, SECRETARY OF STATE MICHAEL ADAMS, AND TREASURER MARK METCALF:

Matthew F. Kuhn
John H. Heyburn
Office of the Attorney General

Heather L. Becker
Department of Agriculture

Alexander Y. Magera
Office of Auditor of Public Accounts

Jennifer Scutchfield
Office of Secretary of State

Sam P. Burchett
Office of State Treasurer